# Illinois Official Reports

## Appellate Court

---

### *People v. Simpson*, 2015 IL App (1st) 130303

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MARCUS SIMPSON, Defendant-Appellant. |
| District & No. | First District, Third Division<br>Docket No. 1-13-0303 |
| Filed | March 11, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-CR-10487-01; the Hon. Colleen Ann Hyland, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Andrew S. Gable, of Chicago, for appellant.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Mary P. Needham, and Jocelyn M. Schieve, Assistant State's Attorneys, of counsel), for the People. |

Panel                    JUSTICE HYMAN delivered the judgment of the court, with opinion. Justices Lavin and Mason concurred in the judgment and opinion.

## OPINION

¶ 1    After a bench trial, Marcus Simpson and his codefendant, Andrew Dortch, were convicted on four counts of home invasion (720 ILCS 5/12-11(a)(3) (West 2008)) with guns, while the residents were in the house. Simpson received a sentence of 30 years in prison. He appeals, arguing the trial court erred in denying his pretrial motion to quash his arrest and suppress evidence. Simpson also argues the State failed to lay the proper foundation for the testimony of its shoeprint expert witness and failed to prove defendant guilty beyond a reasonable doubt.

¶ 2    We affirm. The trial court did not err in finding that the police acted reasonably under *Terry v. Ohio*, 392 U.S. 1 (1968), in stopping defendants' vehicle, which matched the description provided by the victims and was in the vicinity of the crime, and that the police properly conducted a limited protective search of defendants' clothing under *People v. Johnson*, 387 Ill. App. 3d 780 (2009), because the perpetrators were believed to be armed. Further, the trial court properly admitted testimony from the shoeprint expert, and her testimony along with the State's other evidence was sufficient to prove Simpson guilty beyond a reasonable doubt.

¶ 3                              BACKGROUND

¶ 4    At 3:15 a.m. on May 15, 2009, Nicholas Voutiritsas arrived from work to find two armed men in his Palos Hills home. The men wore dark clothes and black masks. After one of the men scuffled with Voutiritsas and the other man tried to restrain Voutiritsas's son, both men ran out of the house, got into a car, and drove away. Voutiritsas called 911 and described for the dispatcher the men's clothes, their car, and the direction they were driving. Palos Hills police officer Steven Vaccaro was responding to the dispatch about the home invasion when he saw a car matching the description and followed it. After seeing that the car's headlights had been turned off, Officer Vaccaro activated his siren. The car then made a turn, without signaling, before the driver pulled into a residential driveway and turned off the car engine. When backup arrived, Officer Vaccaro approached the car and apprehended Dortch, who was in the driver's seat, and Simpson, who was in the passenger seat. While patting down both men, Officer Vaccaro found a partial roll of duct tape in Dortch's pocket. Officer Vaccaro looked into the car and saw a black mask on the front passenger side floor. A later search uncovered two pairs of black gloves, a black mask, a black knit hat, one roll of duct tape, and two semiautomatic weapons in a gym bag in the back. Both men were arrested and charged with four counts of home invasion (720 ILCS 5/12-11(a)(3) (West 2008)).

¶ 5    Before trial, Simpson and Dortch moved to quash their arrests and suppress evidence, alleging insufficient probable cause for the stop and, thus, that any evidence found after their arrests should be suppressed. At a hearing on the motion, Officer Vaccaro testified that on May 15, 2009, he received a dispatch at about 3:20 a.m. that a home invasion was in progress. On his way to the address, a second dispatch informed him that the suspects had fled the scene. The dispatcher said the suspects were two black males, wearing black clothing and black

masks, armed with guns, and driving a late-model black car heading southbound on Roberts Road. Officer Vaccaro saw a car matching that description and driving in that direction on Roberts Road but could not see who was in the car. Officer Vaccaro said there were no other cars on the road and that he did not see the car commit any traffic violations.

¶ 6　　Officer Vaccaro followed as the car made a left-hand turn onto 111th Street. After about 75 feet, the car's lights went off, and Officer Vaccaro activated his siren to attempt to stop the car. Officer Vaccaro said that the car traveled about 100 yards with its lights off and then, without signaling, made a right-hand turn onto Westwood Drive, pulled into the first residential driveway, and turned off the engine. Officer Vaccaro waited for backup and when Officer Brad Fletcher arrived, both officers approached the car with their guns drawn. Officer Vaccaro saw two black men in the front seat wearing black clothes. Simpson and Dortch were placed in handcuffs. Officer Vaccaro performed a pat down on both men and found half a roll of duct tape in Dortch's pocket but did not find any weapons. Officer Vaccaro placed Simpson and Dortch in different squad cars. Officer Vaccaro did not search but looked inside the men's car and saw a black mask on the passenger side floorboard. Officer Vaccaro testified that after he found the duct tape and black mask, Simpson and Dortch were placed under arrest for investigation into home burglary. The car was towed to a secure lot, and after obtaining a signed release from its owner, police searched the car and recovered evidence in the trunk that they intended to use at trial.

¶ 7　　The trial court denied the motion to quash the arrests and suppress evidence. Relying on *Terry v. Ohio*, 392 U.S. 1 (1968), and *People v. Johnson*, 387 Ill. App. 3d 780 (2009), the court found that Officer Vaccaro acted properly because "an officer may make a proper, investigatory stop and may conduct a limited protective search of the individual's outer clothing for weapons if the officer reasonably believes the individual is armed and presently dangerous to the officer or others." The court concluded that Officer Vaccaro, who knew a home invasion had been reported in the vicinity, made a proper *Terry* stop of a car matching the suspects' car and properly conducted a pat down search for his own safety because he knew the suspects were armed. The duct tape Officer Vaccaro found in Dortch's pocket and the mask on the passenger side floor indicated that Simpson and Dortch may have been involved in a crime and led to a proper arrest.

¶ 8　　The case proceeded to a joint, two-day bench trial on October 4 and 18, 2012. Nicholas Voutiritsas testified that on May 15, 2009, he arrived home from work at about 3:15 a.m., parked in the driveway, and went to the front door. As he entered, a man came up behind him, told him to be quiet, pushed him inside, and hit him in the back of the head with a gun. Once inside, Voutiritsas turned around and saw a man dressed in black, holding a gun, and wearing a mask and black gloves. He also saw a second man walking through the entryway into the kitchen. Voutiritsas fought with the man holding the gun. He pulled up his mask halfway to his nose and punched him in the face three or four times. Voutiritsas saw that the man was black.

¶ 9　　Voutiritsas's 21-year-old son, James, was upstairs in his bedroom watching television when he heard a commotion downstairs. He opened his bedroom door, went into the hallway, and saw a masked man dressed in black coming up the stairs. Seeing that the man was holding a gun, James put his hands up, and the man told him to turn around and pushed him back into his room, pointing the gun at his back. He made James lie facedown on the floor and pointed the gun at the back of his head. James heard what sounded like duct tape and thought the man was trying to tape his hands behind his back, because he felt something sticky on his wrists.

The man then tore off the tape and left the bedroom. James ran to his sister's bedroom. She was on the phone with the police and James got on the phone and told the police what was happening.

¶ 10 Voutiritsas's wife testified she was sleeping when she heard her husband screaming her name. She ran into the hallway and saw a black man coming up the stairs and go into her son's bedroom. She said the man was wearing all black, but she could not see if he had anything on his face and could not remember if he had a gun. She ran back to her bedroom and called 911.

¶ 11 Voutiritsas testified that after he fought with the first man, both men ran out the front door and through the backyard. Voutiritsas chased them for a while but it was dark and he could not see anything so he ran back to the front of the house. Voutiritsas called 911 and told the dispatcher what happened and that he had just seen a small, dark-colored car driving on Olympia East, one block over. He told the dispatcher the car turned right onto 107th Street, headed east and then made a right turn, south onto Roberts Road.

¶ 12 Officer Vaccaro's trial testimony mirrored his testimony at the suppression hearing. Officer Brad Fletcher, who acted as backup at the scene, testified that he processed Simpson and Dortch at the police station and took Simpson's shoes and Dortch's boots, which were inventoried as evidence.

¶ 13 Sergeant Heather Poerio, a crime scene investigator with the Illinois State Police, testified that she arrived at the home at 5:45 a.m. She took photographs inside and outside the residence. She was unable to find any latent fingerprints but recovered three footwear impressions from the entryway and one from a checkbook. Poerio used fingerprint powder to collect the impression from the checkbook and gel lifts to collect the impressions on the floor. She also obtained DNA swabs from Voutiritsas's hands and Dortch's face. Later that morning, Poerio searched the car Simpson and Dortch were driving and found a black and gold Adidas bag, which contained two pairs of black gloves, a black knit hat, two loaded guns, one black mask, and a roll of duct tape. The bag was in the trunk and was accessible from the backseat.

¶ 14 Nicole Fundell, a forensic scientist with the Illinois State Police, testified as an expert in firearm and toolmark identification, and footwear and tire track impressions. Fundell examined the firearms recovered from the bag and determined they were in working condition. She also received six gel lift impressions Poerio made at the crime scene. Fundell testified she prepared test impressions with Simpson's shoe and Dortch's boot. She compared the gel prints from the scene with the test impressions and found that Simpson's left shoe matched one of the gel lifts and Dortch's right boot matched another gel lift from the scene. On cross-examination, Fundell testified she found four comparison points between the gel print and the impression of Simpson's shoe, and she stated that in footwear analysis there is no standard number of comparison points.

¶ 15 The parties stipulated that Mandy Sanchez, a Cook County State's Attorney investigator, took buccal swabs from Simpson and Dortch and that David Turgen, a forensic scientist with the Illinois State Police, received buccal swabs from Voutiritsas's left hand and from Simpson and Dortch. Turgen conducted DNA analysis on the swab from Voutiritsas's hand and found a mixture of DNA from two people, one of which, in Turgen's expert opinion, matched the DNA profile of codefendant Dortch.

¶ 16 After the State rested, Simpson and Dortch moved for directed findings, which the trial court denied.

¶ 17    Neither Simpson nor Dortch testified. Mark Sanders, a private investigator, testified on codefendant Dortch's behalf. Sanders said he conducted a test of the 2009 Honda Accord Dortch was driving the night he was arrested and observed that the car's running lights, which are below the headlights, could not be turned off while the car was running. Simpson entered into evidence a copy of the 911 tapes from the night he was arrested.

¶ 18    After closing arguments, the trial court found Simpson and Dortch guilty of four counts of home invasion. The trial judge noted the items found in the car, including duct tape, a mask, gloves, and a fully loaded gun, and stated, "It is not a coincidence that these items were recovered from that car within minutes after this home invasion took place, minutes away from the crime scene." The court found that, "The evidence is overwhelming, not only supported by circumstantial evidence, but the physical and scientific evidence that was left behind by the defendant." Simpson filed a motion for a new trial, which the trial court denied. After a hearing, the court sentenced Simpson to 30 years in prison on count I and merged the remaining counts. Simpson filed a motion for reconsideration of his sentence, which also was denied.

¶ 19                                          ANALYSIS
¶ 20                        Motion to Quash Arrest and Suppress Evidence
¶ 21    Simpson first contends the trial court erred in denying his motion to quash his arrest and suppress evidence. Specifically, Simpson asserts the State failed to establish reasonable suspicion to justify a *Terry* stop and there was no probable cause for arrest. The State maintains the trial court properly denied the motion because the totality of the circumstances created reasonable suspicion to pull the defendants' car over for an investigative stop and then to arrest them for home invasion after finding the duct tape in Dortch's pocket and seeing the black mask on the car's floor.

¶ 22    An appeal from a trial court's ruling on a motion to suppress presents mixed questions of fact and law. *People v. McDonough*, 239 Ill. 2d 260, 265-66 (2010). We accord great deference to the trial court's factual and credibility determinations and will disturb them only if they are against the manifest weight of the evidence. *Id*. at 266; *People v. Luedemann*, 222 Ill. 2d 530, 542 (2006). But we review *de novo* the trial court's ultimate determinations with respect to probable cause or reasonable suspicion, as well as the trial court's application of the facts to the law to determine whether suppression is warranted under the facts presented. *McDonough*, 239 Ill. 2d at 266; *People v. Johnson*, 408 Ill. App. 3d 107, 111 (2010). "[I]n reviewing the trial court's ruling on a motion to suppress, we may consider the entire record, including trial testimony." *People v. Robinson*, 391 Ill. App. 3d 822, 830 (2009).

¶ 23    A police officer may stop an individual for temporary questioning if the officer reasonably infers from the circumstances that the individual is involved in criminal activity. *Terry*, 392 U.S. at 30; 725 ILCS 5/107-14 (West 2008). To justify a temporary detention, the officer must point to specific, articulable facts which, when considered with natural inferences, make the intrusion reasonable. *People v. Ledesma*, 206 Ill. 2d 571, 583 (2003), *overruled on other grounds by People v. Pitman*, 211 Ill. 2d 502, 513 (2004). In determining the reasonableness of a *Terry* stop, we look to the totality of the circumstances. *People v. Baskins-Spears*, 337 Ill. App. 3d 490, 499 (2003). It is well established that the facts forming the basis of reasonable suspicion need not rise to the level of probable cause and do not require an officer to actually observe the commission of a crime. *People v. Estrada*, 394 Ill. App. 3d 611, 616 (2009). But

the necessary quantum of suspicion must exist before the stop or detention. *Id*. at 619. "[T]he determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior." *Illinois v. Wardlow*, 528 U.S. 119, 125 (2000). When an officer justifiably believes that the individual whose suspicious behavior he or she is investigating at close range is armed and dangerous, the officer also may conduct a pat down search for a weapon. *Terry*, 392 U.S. at 24; *People v. Sorenson*, 196 Ill. 2d 425, 432 (2001).

¶ 24        Simpson contends there were no "specific and articulable facts" to justify a *Terry* stop. He asserts Officer Vaccaro had no specific description of the home invasion perpetrators, no information on the make or model of the getaway car or the number of people in the car, and no personal knowledge that a crime occurred. He argues that the only facts Officer Vaccaro had were that a dark, late-model car was driving on a street in the vicinity of where a crime may have occurred. He suggests Officer Vaccaro was acting on nothing more than a hunch, which is not justification for a *Terry* stop.

¶ 25        We disagree. Reasonable suspicion can be derived, in part, when police observe individuals similar to those believed fleeing from a recent crime scene when the observed individuals are located in the general area where the fleeing suspects would be expected to be, given the time of the crime and the distance from the crime scene. *People v. Rivera*, 272 Ill. App. 3d 502, 506 (1995). Officer Vaccaro saw a late-model black car heading southbound on Roberts Road immediately after receiving a dispatch that suspects from a home invasion were fleeing in a late-model black vehicle southbound on Roberts Road. The crime occurred in the early morning hours and Officer Vaccaro said there were no other vehicles on the road. This created the reasonable suspicion for a brief *Terry* stop. Suspicion was further heightened by the headlights having been turned off, the driver making a right-hand turn without signaling, and the driver pulling into a driveway before shutting off the engine.

¶ 26        Simpson contends that Sanders, the private investigator who testified that he tested the car and determined that the running lights could not be turned off while the car was running, proves there was no traffic violation justifying the stop. Sanders actually testified that the car's running lights, which are below the headlights, cannot be turned off while the car is running. This does not contradict Officer Vaccaro's testimony that the headlights were turned off. Further, Officer Vaccaro testified the driver made a right-hand turn without signaling, which constitutes a separate traffic violation. A stop based on an officer's observation of a traffic violation is valid at its inception. *People v. Moss*, 217 Ill. 2d 511, 527 (2005). Thus, Officer Vaccaro's decision was permissible absent the other indicia indicating the occupants may have been involved in the home invasion.

¶ 27        We also reject Simpson's contention that the trial court erred in relying on *People v. Johnson*, 387 Ill. App. 3d 780 (2009), in upholding Officer Vaccaro's stop and search. The facts in *Johnson* are similar to the facts here. A police officer responding to a call of a shooting at 3:30 a.m. saw two men get into a car in a parking lot near the scene of the shooting. The officer followed. There were no traffic violations committed or attempts to flee. *Id*. at 782. After a couple of blocks the car pulled into the parking lot of a public housing project and parked. When the occupants got out, the officer conducted a protective pat down search and found nothing. The officer also searched the car and, after finding a gun, arrested both men. *Id*. at 782-83. The trial court denied defendant's motion to quash his arrest and suppress evidence, and the appellate court affirmed, finding that the officer, responding to a crime in progress, conducted a proper investigative stop. *Id*. at 789-90. The court also found the officer conducted

a permissible protective pat down because it was reasonable to believe the men were armed and dangerous. *Id*.

¶ 28 Also, *Johnson* involved a shooting, which is an inherently dangerous crime, and a home invasion involving two armed perpetrators is an inherently dangerous crime justifying Officer Vaccaro's pat down. Thus, the totality of the circumstances made it reasonable for Vaccaro to infer that the occupants were involved in criminal activity and to stop the vehicle, including the time the crime occurred, the proximity of the car to the crime scene, the description of the car, the fact that defendant's car was heading in the same direction on Roberts Road as the suspects' car, and the actions by the driver. Further, because the perpetrators of the home invasion were armed, it was also reasonable to conduct a protective pat down search.

¶ 29 Alternatively, Simpson contends that even if a *Terry* stop was permissible, there was not probable cause to escalate that stop to an arrest. Simpson asserts that he was under arrest when he was handcuffed and because the duct tape and mask were not discovered until later, they cannot be used to find probable cause to arrest. The State contends the arrest did not occur until after the police found the duct tape and the black mask in the front passenger seat.

¶ 30 Although the use of handcuffs to restrain the person being detained is generally an indication that the detention is an arrest rather than a *Terry* stop, a detainee may be handcuffed during the duration of an investigatory *Terry* stop where necessary for officer or public safety. *People v. Arnold*, 394 Ill. App. 3d 63, 70-71 (2009). See also *People v. Colyar*, 2013 IL 111835, ¶ 46 ("handcuffing does not automatically transform a *Terry* stop into an illegal arrest"). "It would be paradoxical to give police the authority to detain pursuant to an investigatory stop yet deny them the use of force that may be necessary to effectuate the detention." *People v. Starks*, 190 Ill. App. 3d 503, 509 (1989). Therefore, "the difference between an investigatory stop and an arrest does not necessarily lie in the initial restraint of movement. Rather, it lies in the length of time the suspect is detained and the nature and scope of the investigation which follows the initial stop. If the officer's suspicions are not allayed within a reasonable time, the suspect must be allowed to leave or an arrest must be made." *People v. Walters*, 256 Ill. App. 3d 231, 237 (1994).

¶ 31 Officer Vaccaro knew that the suspects fleeing the scene of the home invasion were armed with guns. After making a stop, suspecting the occupants might be involved in that crime and seeing that the men inside matched the description of the perpetrators, he handcuffed both men and quickly did a pat down search. Under the circumstances, handcuffing alone did not constitute an arrest, as it was permissible for Officer Vaccaro to ensure his own safety and the safety of Officer Fletcher. After conducting the search and finding the black mask on the passenger side floor, Officer Vaccaro had probable cause to arrest. Probable cause exists where the facts and circumstances known to the arresting officer at the time of the arrest would lead a reasonable person to believe that a crime had occurred and the suspect had committed it. *People v. Grant*, 2013 IL 112734, ¶ 11. The duct tape, the black mask and the similarities between the defendants and the victims' descriptions of the perpetrators, their clothing, and their car gave Officer Vaccaro a reasonable belief that Simpson and Dortch were involved in the home invasion and, thus, probable cause to arrest them. Therefore, we find the trial court did not err in denying Simpson's motion to suppress evidence and quash his arrest.

¶ 32                                Shoeprint Evidence

¶ 33        Simpson next contends the State failed to establish a proper foundation for Nicole Fundell's testimony regarding shoeprint evidence and, thus, the trial court erred in admitting it. Simpson acknowledges he did not raise this issue below, but he maintains that it should be reviewed as plain error because the evidence at trial was closely balanced and the improper admission of the expert's testimony denied him a fair trial.

¶ 34        To preserve an issue for review, defendant must object at trial and raise the matter in a written posttrial motion. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). "This rule is particularly appropriate when a defendant argues that the State failed to lay the proper technical foundation for the admission of evidence, and a defendant's lack of a timely and specific objection deprives the State of the opportunity to correct any deficiency in the foundational proof at the trial level." *People v. Woods*, 214 Ill. 2d 455, 470 (2005). Simpson did neither. Thus, he forfeited the issue for review. *Enoch*, 122 Ill. 2d at 186. Under the narrow and limited plain error exception to the general forfeiture rule, a reviewing court may consider forfeited errors where the evidence was closely balanced or where the error was so egregious that defendant was deprived of a substantial right and thus a fair trial. *People v. Herron*, 215 Ill. 2d 167, 178-79 (2005). To obtain relief, defendant must first show that there was a clear or obvious error. *People v. Hillier*, 237 Ill. 2d 539, 545 (2010). The burden of persuasion remains with defendant, and the first step in plain error review is to determine whether any error occurred. *People v. Lewis*, 234 Ill. 2d 32, 43 (2009). We find none here to excuse Simpson's forfeiture of this issue.

¶ 35        For expert testimony to be admissible, the proponent must lay an adequate foundation establishing that the information on which the expert based his or her opinion is reliable. *People v. Safford*, 392 Ill. App. 3d 212, 221 (2009). Whether the foundational requirements have been met is a question of law that we review *de novo*. *Id.*

¶ 36        Simpson contends the State failed to lay an adequate foundation for Fundell's testimony because "[her] opinion on direct lacked details such as how she specifically determined there was a match with Simpson's shoes and how many points of comparison matched." Simpson acknowledges that on cross-examination Fundell stated that her opinion was based on four comparison points, but Simpson asserts this is not a proper foundation because it was not disclosed on direct examination. He further contends four comparison points is not an adequate foundation for an expert opinion.

¶ 37        The number of points of comparison is part of the facts underlying the expert opinion and, under Rule 705 of the Illinois Rules of Evidence (Ill. R. Evid. 705 (eff. Jan. 1, 2011)), the burden was on the defense to elicit those facts. Rule 705 permits an expert to give an opinion without divulging the basis for it and shifts the burden to the opposing party to elicit and to explore the underlying facts or data on cross-examination. Ill. R. Evid. 705 (eff. Jan. 1, 2011). Rule 705, which was adopted in the year before Simpson's trial, codified preexisting case law placing the burden on the adverse party during cross-examination to elicit facts underlying expert opinion. Ill. R. Evid., Committee Commentary (eff. Jan. 1, 2011) (the newly enacted Illinois Rules of Evidence merely codified existing case law whenever the Illinois Supreme Court "had clearly spoken"); *People v. Williams*, 238 Ill. 2d 125, 137 (2010) (observing that in *Wilson v. Clark*, 84 Ill. 2d 186 (1981), the Illinois Supreme Court had adopted the identical Rule 705 of the Federal Rules of Evidence).

¶ 38    The trial court did not err in admitting Fundell's expert testimony. Simpson conceded Fundell was an expert properly qualified to testify about footprint identification. His attorney performed a vigorous cross-examination of Fundell regarding the process of footwear identification, the steps she took in this case in making an identification, the number of points of comparison she found, and the absence of a standard number of comparison points in the field of footwear identification. Any issues regarding the details Fundell provided to support her opinion that Simpson's shoeprint matched the shoeprint found at the crime scene went to weight, not admissibility. In the absence of an error by the trial court in admitting the Fundell testimony, there can be no plain error, and thus Simpson has forfeited the issue.

¶ 39                                   Guilt Beyond a Reasonable Doubt

¶ 40    Lastly, Simpson contends the State failed to prove him guilty beyond a reasonable doubt, because its case relied solely on unreliable and inconsistent eyewitness testimony and speculative shoeprint evidence. Further, he contends the State failed to prove an essential element of the crime of home invasion–that he was not a police officer in the line of duty.

¶ 41    "The due process clause of the fourteenth amendment to the United States Constitution requires that a person may not be convicted in state court 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.' " *People v. Cunningham*, 212 Ill. 2d 274, 278 (2004) (quoting *In re Winship*, 397 U.S. 358, 364 (1970)). " '[T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction [is] *** whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.' " *People v. Wheeler*, 226 Ill. 2d 92, 114 (2007) (quoting *Jackson v. Virginia*, 443 U.S. 307, 318 (1979)). In making that determination, we are bound to consider the evidence in the light most favorable to the State. *Id.* A court entertaining a sufficiency of the evidence challenge "will not retry a defendant." *Id.* Instead, the factual determinations and credibility assessments made by the fact finder–here, the trial court–are entitled to "great weight" because the fact finder, and not the reviewing court, had the opportunity to hear the witnesses and observe their demeanor in court. *Id.* at 114-15. "Testimony may be found insufficient *** only where the record evidence compels the conclusion that no reasonable person could accept it beyond a reasonable doubt." *Cunningham*, 212 Ill. 2d at 280. Accordingly, a reviewing court may reverse a conviction on the grounds that the evidence was insufficient to prove the defendant guilty beyond a reasonable doubt only when "the evidence is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of defendant's guilt." *Wheeler*, 226 Ill. 2d at 115.

¶ 42    Simpson was found guilty on four counts of home invasion. The elements of home invasion are set forth in section 12-11(a)(3) of the Criminal Code of 1961 (720 ILCS 5/12-11(a)(3) (West 2008)).

¶ 43    The evidence showed that on May 15, 2009, two men, later identified as Simpson and his codefendant, entered Nick Voutiritsas's home at about 3:15 a.m., while his wife and daughter were sleeping and his son, James, was in his bedroom watching television. Voutiritsas arrived home from work and found the two perpetrators, both wearing dark clothes and masks, in the entryway to his house. Voutiritsas said one of the perpetrators pushed him from behind and hit him in the back of the head with a gun. The other perpetrator, also armed with a gun, went upstairs and forced James to lie facedown on the floor and pointed a gun at his head. He attempted to put duct tape on James's hands before abruptly leaving. Simpson was identified as

one of the intruders shortly after fleeing the scene when the car he and the codefendant were driving was stopped by Officer Vaccaro. Both men were wearing dark clothing, the codefendant had half a roll of duct tape in his pocket and Officer Vaccaro found a black face mask in the front passenger seat. When the police later obtained a warrant and searched the car, they found a gym bag with black gloves, a black hat, duct tape, a black mask, and two guns. Both Simpson's shoe and his codefendant's boot fit footwear impressions recovered from the scene and the codefendant's DNA was recovered from Voutiritsas's hand. This evidence, when viewed in a light most favorable to the State, established beyond a reasonable doubt that Simpson, without authority, knowingly entered the Voutiritsas home at 3:15 a.m., a time when it is likely that the occupants of a residence would be at home, and while armed with a firearm, used force or threatened to use imminent force on both Nick and James Voutiritsas.

¶ 44    Simpson contends Nick Voutiritsas's eyewitness testimony was unreliable because he was under stress and inconsistent because he testified that Simpson was the second man, who supposedly went upstairs and tried to duct tape James's hands, but Dortch was found with duct tape in his pocket, and because James testified that the man had a gun, while Voutiritsas testified he did not see that man with a gun. As noted, the credibility of witnesses, the weight to be given their testimony, and the resolution of any conflicts in the evidence are within the province of the trier of fact, and a reviewing court will not substitute its judgment for that of the trier of fact on these matters. *People v. Brooks*, 187 Ill. 2d 91, 132 (1999). Nothing in Voutiritsas' testimony at trial is "so unsatisfactory, improbable or implausible" that it raises a reasonable doubt as to the defendant's guilt. *People v. Slim*, 127 Ill. 2d 302, 307 (1989).

¶ 45    As to the shoeprint evidence, Simpson contends that Fundell testified that she found four comparison points, which is not sufficient to convict. As noted above, no Illinois case has specifically stated a requisite number of similarities for shoeprint evidence to be sufficient. The number of comparison points "goes to the weight of the evidence, and, thus, whether there is a sufficient number to make a positive identification is a question for the [trier of fact]." *People v. Campbell*, 146 Ill. 2d 363, 384-85 (1992). Fundell testified about the process she used to compare the footprints obtained from the crime scene to the impression she made using one of Simpson's shoes. She noted that she placed the transparent overlay on top of the impression and that all of the nicks, cuts, and damage lined up exactly with the impression. She also stated that the size and shape of the impression and Simpson's shoe were the same. Fundell said that her notes indicate she marked four marks of identification but stated those were not the only comparison points she found, but only the most predominant. The issue of the weight and sufficiency of the shoeprint evidence was properly determined by the trial court.

¶ 46    Lastly, we reject Simpson's contention that the State failed to present sufficient evidence to establish a necessary element of the offense of home invasion–that he was not a police officer acting in the line of duty.

¶ 47    First, one witness, Sergeant Poerio, was asked on direct examination whether she learned during the course of her investigation that Simpson and Dortch were not police officers in the line of duty, and she responded, "I had no information that these gentlemen were law enforcement at all." More significantly, however, even if there were no direct evidence, the State may establish that an accused is not a police officer through circumstantial evidence, by presenting sufficient evidence that his or her conduct was contrary to how a police officer might act. *People v. Davis*, 106 Ill. App. 3d 260, 266 (1982) (although no direct evidence

adduced at trial as to defendant's status of a peace officer, "sufficient circumstantial evidence contained in the record to establish beyond a reasonable doubt that he was not 'acting in the line of duty' ").

¶ 48　　Simpson and Dortch entered the Voutiritsas's home at 3:15 a.m., wearing dark clothes and black face masks. One of them pushed Voutiritsas into the home and hit him on the back of the head with a gun, and one of them forced James to lie facedown on the floor, pointed a gun at his head, and tried to put duct tape on James's hand, before abruptly fleeing from the house. This circumstantial evidence established beyond a reasonable doubt that Simpson and Dortch were not police officers acting in the line of duty.

¶ 49　　Affirmed.