2020 IL App (1st) 181651-U

FIRST DISTRICT,
FIRST DIVISION
September 8, 2020

No. 1-18-1651, 1-18-1785 & 1-18-1786 (consolidated)

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| | ) | Cook County, Illinois. |
| Plaintiff-Appellee, | ) | |
| | ) | No. 15 CR 2729 |
| v. | ) | 15 CR 1945 |
| | ) | 15 CR 1946 |
| ALEX DREW, | ) | |
| | ) | Honorable |
| Defendant-Appellant. | ) | Charles P. Burns, |
| | ) | Judge Presiding. |

_____

JUSTICE COGHLAN delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Lavin concurred in the judgment.

**ORDER**

¶ 1     *Held*:   The trial court's factual findings at the suppression hearing were not manifestly erroneous, and the trial court properly held that there was probable cause to make a valid arrest. The convictions were not obtained using false testimony. Defendant's 24-year sentence was not an abuse of discretion.

¶ 2     Defendant was charged by indictment with attempt aggravated robbery of a Subway in case number 15 CR 2729, aggravated robbery of a Dunkin' Donuts in case number 15 CR 1945, aggravated robbery of a McDonald's in case number 15 CR 1946, and aggravated robbery of a

White Castle in case number 15 CR 2279. All four of the offenses occurred on January 13, 2015 and were consolidated for trial without objection. Following a bench trial on three of the cases, defendant was found guilty of aggravated robbery of Dunkin' Donuts and McDonald's and attempt aggravated robbery of Subway. He was sentenced to three concurrent terms of 24 years in the Illinois Department of Corrections. On appeal, defendant alleges that the trial court erroneously denied his motion to quash arrest and suppress evidence, the State elicited false testimony at trial and his 24-year sentence was excessive. For the following reasons, we affirm the convictions and the sentences imposed by the trial court.

¶ 3                           Motion to Quash Arrest and Suppress Evidence

¶ 4          Prior to trial, defendant filed a motion to quash arrest and suppress evidence, including a show-up identification. At the hearing on defendant's motion, Officer William Wagner testified that when he got to work at 9:00 p.m. on January 13, 2015, he received a police bulletin at role call reporting that a nearby Dunkin' Donuts had been robbed at 2:40 a.m. and a McDonald's had been robbed at 8:10 a.m. A small, red vehicle, similar to a Chevy Spark, with a missing rear bumper and a temporary Illinois license plate was involved in both robberies. Around 9:51 p.m., Wagner received a radio dispatch that a White Castle at 79th and Pulaski had been robbed, involving a similar vehicle. The offender was described as a male, Hispanic or Black, approximately 6' 3" to 6' 5" tall, wearing a gray hoodie, gray sweats, white gym shoes with light powder blue accents, and a black mask.

¶ 5          At 10:06 p.m., Wagner and his partners stopped a red vehicle matching this description approximately 3 miles from the White Castle. Defendant, a Black male, approximately 6 feet 3 inches tall, wearing white gym shoes with a "distinct powder blue on them," was a passenger in

the vehicle. Defendant was removed from the vehicle and handcuffed, and a gray hoodie and black mask were recovered from the back seat.

¶ 6        Sergeant Dean Claeson learned about the police bulletin regarding the Dunkin' Donuts and McDonald's robberies upon arriving at work on January 13, 2015. At approximately 9:40 p.m. Claeson and his partner responded to the White Castle robbery. The restaurant manager described the offender as a Black male with light skin, approximately 6 feet 3 inches tall, wearing a gray sweatshirt, blue jeans, a black hat and gym shoes.

¶ 7        At the scene, Claeson viewed a surveillance video showing the offender wearing blue jeans with distinctive stitching on the back pockets, a dark sweatshirt, white shoes with blue laces and a mask partially covering the lower part of his face. The vehicle used in the offense matched the description of the vehicle used in the other robberies. Claeson radioed a description of the offender and the vehicle. As he was leaving the White Castle, he learned that officers had "spotted the vehicle" in the area of 71st and Western. When he arrived at that location, Claeson observed a "small, red, four door vehicle *** missing a rear bumper [with] plastic on the back window with a temporary tag" and two individuals being detained outside the vehicle. He positively identified defendant as the offender depicted in the White Castle surveillance video.

¶ 8        Following Claeson's testimony, the court asked defense counsel to clarify what show-up identification he was seeking to suppress. Counsel informed the court that:

> "the officer in this case admits he filed a report stating that a show-up had been conducted with one of the employees from the White Castle, I believe. Later on they filed another report indicating that that had been a mistake, that it was the sergeant who had viewed and identified my client."

The judge inquired whether there was "going to be any evidence introduced or any stipulation with regard to the show-up ***[.]" Counsel responded, "none other than what you've heard from the witnesses."

¶ 9 The judge denied defendant's motion to quash arrest and suppress evidence, finding that "the totality of the circumstance[s], based on [directly imputed] knowledge, [showed] there was sufficient evidence to stop the car and sufficient evidence to place the defendant under arrest."

¶ 10 Bench Trial

¶ 11 Amanda Alonso testified that on January 13, 2015, she was working at the Dunkin' Donuts at 47th and Kedzie. At approximately 2:40 a.m., a tall man wearing a ski mask and dark hoodie entered the store and approached the register. He said, "give me the money in the register before I shoot you, bitch." The man's hands were in his pockets and Alonso believed he had a weapon. Alonso "gave him the whole register, and he took the money" and left. A surveillance video of the incident was admitted into evidence.

¶ 12 Yudith Guzman was working at the McDonald's at 47th and Laflin on January 13, 2015. At approximately 8:10 a.m., a man wearing a gray or black sweater, a mask and white shoes came in and ordered her to call her manager over. He told the manager to give him all the money in the register or he would shoot her. After the manager complied, the man took the money and left. A surveillance video of the incident was admitted into evidence.

¶ 13 Jose Espinoza was working at the Subway at 79th and Cicero on January 13, 2015 at 9:40 p.m., when a man approximately 6 feet tall, wearing a black hooded sweater and a mask entered the store and walked behind the counter. The man grabbed Espinoza by the collar and stated that "he had a weapon, and he wasn't afraid to use it." When Espinoza realized that the "weapon" the man was holding inside his pocket was a water bottle, he started pushing him and tried to grab his

face mask, but the man ran out of the store. A surveillance video of the incident was admitted into evidence.

¶ 14        Officer Mahmoud Haleem and his partners were on patrol around 10:06 p.m. on January 13, 2015 when a radio call came in regarding "an incident" at a White Castle with a description of the offender and vehicle. Shortly thereafter, the officers curbed a red Chevy with a missing bumper and broken back window. The defendant was sitting in the front passenger seat and matched the description of the offender. Haleem testified that, "[w]e detained him and had the victim from White Castle come and ID him and the vehicle." The following colloquy then took place:

> "ASA: Did you see – the officers who were standing with that witness, did you see that officer do anything with his hand?
> HALEEM: Yes, actually he gave me a thumb's up saying that's the vehicle and that's the defendant.
> ASA: The officer gave you a thumb's up?
> HALEEM: Yes.
> ASA: When an officer gives you a thumb's up, what does that mean?
> HALEEM: That means he was positive, that he was ID'd.
> ASA: What did you then do –
> THE COURT: Hold on a second. Is there an objection?
> DEFENSE COUNSEL: Yes, your Honor.
> THE COURT: Is this not hearsay?
> ASA: I will move on, Judge.
> THE COURT: I'm going to disregard that."

¶ 15        Detective Ray Verta interviewed defendant on January 14, 2015 at the 8th District. Defendant told Verta that in the early morning hours of January 13, 2015, he took a cab to the Dunkin' Donuts on 47th and Kedzie, entered wearing a mask, approached the cashier with his hand in his pocket and "demanded the money from the cash register or he would kill her." After receiving the proceeds he "had the cab drop him off to a drug house near 60th and Ashland." A guy from the drug house drove him to a McDonald's at 47th and Laflin to do another robbery. He entered the McDonald's and told the employee working the register to call her manager over. With his hand in his pocket "as if he had a weapon," defendant ordered the manager to give him the

money in the register, or he would "blow their head off." Defendant identified the clothing he was wearing at the time of the robberies from a photo of the clothing recovered from the red car at the time of his arrest. He also identified himself in a still photo from the Dunkin' Donuts surveillance video but refused to initial the photos or provide a written statement.

¶ 16    Regarding the Subway robbery, defendant admitted to Detective Patrick Rooney that he entered the Subway, walked behind the counter, and demanded money from the clerk working the register. He was holding a water bottle underneath his shirt, pretending it was a gun. When the clerk fought with him and pushed him back, he dropped the bottle and fled the restaurant without obtaining any proceeds.

¶ 17    The trial court found defendant guilty of aggravated robbery of the Dunkin' Donuts and the McDonald's and attempt robbery of the Subway and sentenced him to 24 years' imprisonment in each case, with the sentences to run concurrently.

¶ 18                                    ANALYSIS

¶ 19                               *Motion to Suppress*

¶ 20    In reviewing a ruling on a motion to quash arrest and suppress evidence, we apply a two-part standard of review. *People v. Hopkins*, 235 Ill. 2d 453, 471 (2009). Findings of historical fact made by the trial court "will be upheld on review unless such findings are against the manifest weight of the evidence." *People v. Lee*, 214 Ill. 2d 476, 483-84 (2005). This deferential standard "is grounded in the reality that the circuit court is in "a superior position to determine and weigh the credibility of the witnesses, observe the witness's demeanor, and resolve conflicts in their testimony." *Id*. However, we review the ultimate question of whether evidence should be suppressed *de novo. Id.* at 484.

¶ 21     Both the United States and Illinois Constitutions protect individuals from unreasonable searches and seizures. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6. In Illinois, a warrantless arrest is *per se* unreasonable unless it falls within a specific, well-delineated exception to the warrant requirement, such as probable cause. *People v. Drake*, 288 Ill. App. 3d 963, 964 (1997). The existence of probable cause depends upon the totality of the circumstances and whether the facts known to the officer at the time of the arrest are sufficient to lead a reasonably cautious person to believe that the arrestee has committed a crime." *People v. Wear*, 229 Ill. 2d 545, 563-64 (2008). "The standard for determining whether probable cause is present is probability of criminal activity, rather than proof beyond a reasonable doubt." *Id.*

¶ 22     Defendant asserts that the officers lacked probable cause to arrest him, because "the evidence presented describes two completely different people making the [show-up identification]." This assertion is based on (1) defense counsel's argument at the suppression hearing that "the officer in this case admits he filed a report stating that a show-up had been conducted with one of the employees from the White Castle" but another report indicated "that that had been a mistake, that it was the sergeant who had *** identified my client;"[1] and (2) Officer Haleem's trial testimony that a victim from the White Castle identified defendant at the scene of his arrest[2].

¶ 23     The totality of the circumstances in this case supports a finding of probable cause that a crime had occurred, and that defendant committed it. In *People v. Follins*, 196 Ill. App. 3d 680,

---

[1] In his reply brief, defendant acknowledges that we cannot consider the police report as substantive evidence, but argues that because it was "specifically referred to during the hearing on the motion to quash arrest and was determined to contain a 'mistake' *** Certainly, in this context, it can be considered by this Court in assessing this argument." Defendant fails to cite any authority to support his proposition, in violation of Supreme Court Rule 341(h)(7) (eff. May 25, 2018). We decline to consider evidence not properly before us. See *People v. Velez*, 388 Ill. App. 3d 493, 502 (2009).

[2] Notably, as discussed in paragraph 14 *supra*, defense counsel's objection to Officer Haleem's testimony at trial was sustained on hearsay grounds and not considered by the trial court.

692-93 (1990), the court found that probable cause existed where defendant was stopped because he matched an accurate description of the offender (Black male, 5 feet 9 inches tall, weighing 170 pounds, wearing a blue sweat suit with white piping) within minutes after a robbery, only a few blocks from the crime scene. Similarly, in *People v. Simpson*, 2015 IL App (1st) 130303, ¶ 31, the court found that probable cause existed where occupants of a vehicle matched the description of the perpetrators of a home invasion and the officer found duct tape and a black mask in the car.

¶ 24    Prior to arresting defendant in this case, officers had received a detailed description of the offender, his apparel, and of the vehicle used in the commission of the offense – "a small, red Chevy *** without a bumper[,] with temporary tags" and a missing back window. Defendant was a passenger in a vehicle that was stopped because it matched this description "minutes after the robbery." In addition, defendant matched the description of the offender and clothes identical to those worn by the offender were recovered from the back seat of the vehicle.

¶ 25    Based on his review of the White Castle surveillance footage, Sergeant Claeson identified defendant at the scene. Like the offender in the video, defendant was wearing "white shoes with distinctive blue laces" and blue jeans with a distinctive pattern on the back pockets. Defendant points to inconsistencies in the testimony of Claeson and Haleem, but it is well-established that discrepancies in identification testimony go to the credibility and weight of the testimony (*People v. Graham*, 179 Ill. App. 3d 496, 506 (1989)) and even a tentative identification may support a finding of probable cause. *In re Edgar C*, 2014 Il App (1st) 141703, ¶¶ 35, 121. We are not persuaded by defendant's argument that an error in a police report regarding defendant's show-up identification was "not a mistake, it is suspicious." We find that the trial court's factual findings were not manifestly erroneous, and that probable cause existed to arrest defendant.

¶ 26                                    *Officer Haleem's Testimony*

¶ 27          In that same vein, defendant argues that he was denied his right to due process by the "clearly false" testimony of Officer Haleem that a White Castle employee identified defendant at a show-up. Defendant concedes that he has forfeited this claim by failing to raise it at trial and in a post-trial motion but urges this Court to review it under the plain error doctrine or as an ineffective assistance of counsel claim. The plain error doctrine permits a reviewing court to address a forfeited claim where a "clear or obvious error occurred" and either (1) "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error," or (2) the "error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." (Internal quotation marks omitted.) *People v. Hood*, 2016 IL 118581, ¶ 18. Accordingly, the first step in a plain error analysis requires the defendant to establish that a clear or obvious error occurred. *People v. Hillier*, 237 Ill. 2d 539, 545 (2010).

¶ 28          "A conviction obtained using false testimony implicates due process concerns and is subject to reversal." *People v. Lucas*, 203 Ill. 2d 410, 422 (2002). A person commits perjury when, "under oath or affirmation, in a proceeding or in any other matter where by law such oath or affirmation is required, he makes a false statement, material to the issue or point in question, which he does not believe to be true." *People v. Redmond*, 265 Ill. App. 3d 292, 309 (1994). The defendant has the burden of showing by clear, convincing, and satisfactory evidence not only that the testimony was false, but that it was willfully and purposefully given. *Id.* The defendant must also show that the testimony was material to his guilt or innocence. *Id.* Defendant has failed to do either in the instant case.

¶ 29    Defendant asserts that Officer Haleem's testimony was "clearly false," because "prior to trial, the parties agreed that the arrest report detailing the show-up identification of Drew by the White Castle employee was a 'mistake,' and that it was Sergeant Claeson who identified Drew, not the White Castle employee." At trial, defendant's attorney argued that an officer admitted filing a report stating that a show-up had been conducted with one of the employees from the White Castle, but a subsequent report indicated that it was the sergeant who had viewed and identified defendant. Based on the State's failure to object to counsel's argument at trial, he argues that the parties "agreed" that the arrest report was a mistake. This assumption, even if correct, is irrelevant.

¶ 30    "Mere inconsistencies in testimony do not establish perjury or that the State knowingly used perjured evidence." *People v. Trimble*, 220 Ill. App. 3d 338, 346 (1991), quoting *People v. Amos*, 204 Ill. App. 3d 75, 85 (1900). Here, inconsistencies between the testimony of Claeson and Haleem "fall short of establishing a knowing use of perjury." *Id.*

¶ 31    Further, the record does not support defendant's assertion that Officer Haleem's testimony was material to the trial court's judgment. A strict standard of materiality applies to claims of knowing use of perjured testimony, and a court of review must overturn a conviction "if there is any reasonable likelihood that the false testimony could have affected the judgment." *People v. Lucas*, 203 Ill. 2d 410, 422 (2003). At the suppression hearing, the court confirmed that no additional show-up identification evidence would be introduced at trial. At trial, the court sustained defendant's objection to Officer Haleem's testimony regarding defendant's identification and "disregarded" that testimony.

¶ 32    Defendant argues that the court's statement that "[t]he victim in the last matter identified him as matching the description" at the post-trial motion hearing suggests that the court improperly considered Officer Haleem's testimony at trial. The State asserts that the court was referring to the

Subway robbery victim's description of the offender. Regardless, a court's post-trial recollection of testimony does not vitiate the court's initial finding of guilt, which was made at a time when the evidence was necessarily fresher in the court's mind. *People v. Burnette*, 325 Ill. App. 3d 792, 803 (2001). Defendant's argument is unavailing in view of the court's finding that "there is no identification by any of these three victims in these consolidated matters that identify this defendant as being the offender" and it's reliance on "circumstantial evidence that shows the guilt or innocence of the defendant in the matter."

¶ 33    Regarding the evidence introduced at trial, the court found that all three victims "came across as very credible" and two of the victims identified the clothing recovered from the red car as the clothing worn by the offender. The surveillance videos showed the offender as being tall and wearing white gym shoes. The defendant identified himself in a still photograph from the Dunkin' Donuts surveillance video and admitted his participation in the robberies to detectives. He also identified the clothing he was wearing during the robberies from a photo of the clothing recovered from the red car. The court found that defendant's admissions to the police were "very close, if not almost parallel to the stories given by the victims in this matter" and that "[t]here is nothing that indicates *** that these statements were hand fed to the defendant." Furthermore, as previously discussed, the trial court "disregarded" Haleem's show-up identification testimony.

¶ 34    Because defendant has failed to establish that the State elicited intentionally false testimony which was material to the issue of his guilt, we find that no "clear and obvious" error occurred at trial and the doctrine of plain error is inapplicable. For these same reasons, we decline to consider defendant's ineffective assistance of counsel claim. *People v. Moon*, 2019 Il App (1st) 161573, ¶ 47; *People v. Hensley*, 2014 IL App (1st) 120802, ¶ 59.

¶ 35                                    *Sentencing*

¶ 36        Finally, defendant argues that the 24-year concurrent sentences imposed were excessive considering his drug addiction, remorse, rehabilitative potential, and the nature of the offense. A trial court has broad discretionary powers in imposing a sentence, and its sentencing decisions are entitled to great deference on review. *People v. Alexander*, 239 Ill. 2d 205, 212 (2010). The trial court is in a superior position "to weigh such factors as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age." *People v. Stacey*, 193 Ill. 2d 203, 209 (2000). The court "is presumed to consider all relevant factors and any mitigation evidence presented [citation] but has no obligation to recite and assign value to each factor. [citation]" *People v. Wilson*, 2016 IL App (1st) 141063, ¶ 11. "The seriousness of the crime is the most critical factor in determining an appropriate sentence, not the presence of mitigating factors ***[.]" *People v. Quintana*, 332 Ill. App. 3d 96, 109 (2002).

¶ 37        In this case, defendant was found guilty of three offenses, two aggravated robberies and one attempt aggravated robbery. Because of his criminal background, defendant was Class X mandatory for purposes of sentencing. 730 ILCS 5/5-4.5-95(b) (West 2016). Therefore, the sentencing range for each offense was 6 to 30 years' imprisonment. 730 ILCS 5/5-4.5-25(a) (West 2016). In addition, defendant was eligible for the discretionary imposition of consecutive sentences. 730 ILCS 5/5-4.5-25(g) (West 2016.

¶ 38        Defendant erroneously argues that the trial court failed to adequately consider the mitigation evidence presented. At the sentencing hearing, in addition to acknowledging that "there [are] a lot of redeeming features to [defendant]," the court considered defendant's remorse, his drug use, and the effect the sentences would have on his family.

¶ 39     Defendant's violent and extensive criminal history includes convictions for armed robbery, aggravated robbery, aggravated robbery of an elderly person, robbery, delivery of a controlled substance, possession of a controlled substance and forgery. As noted by the trial court, the defendant had only been on parole for "a little more than 60 days" before being charged with four new robberies. Ultimately, the court concluded that, "the aggravating factors clearly outweigh the mitigating factors here, particularly with [defendant's] threats of violence and his acts of violence over several decades."

¶ 40     Where, as in the instant case, a sentence falls within the statutory range, we presume it is proper and will not alter it absent an abuse of discretion. *People v. Brown*, 2015 IL App (1st) 130048, ¶ 42 (quoting *People v. Fern*, 189 Ill. 2d 48, 54 (1999)). Defendant essentially asks us to reweigh the sentencing factors and substitute our judgment for that of the trial court, which we cannot do. *People v. Busse*, 2016 IL App (1st) 142941, ¶ 20 (A reviewing court will not reweigh the aggravating and mitigating factors and substitute its judgment for that of the trial court just because it would weigh those factors differently.) The trial court properly considered all mitigating and aggravating factors and did not abuse its discretion in fashioning a sentence that fell within the permissible statutory guidelines. *People v. Snyder*, 2011 IL 111382, ¶ 37.

¶ 41                                                  CONCLUSION

¶ 42     For the foregoing reasons, the convictions and sentences imposed by the trial court are affirmed.

¶ 43     Affirmed.