# Illinois Official Reports

## Appellate Court

---

### *People v. Richardson*, 2017 IL App (1st) 130203-B

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAVONTE RICHARDSON, Defendant-Appellant. |
| District & No. | First District, Sixth Division<br>Docket No. 1-13-0203 |
| Filed | May 12, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-CR-14227; the Hon. Dennis J. Porter, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Abishi C. Cunningham, Jr., Public Defender, of Chicago (Jeffrey Walker, Assistant Public Defender, of counsel), for appellant.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, John E. Nowak, Joan F. Frazier, and Joseph Alexander, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.<br>Justices Harris and Delort concurred in the judgment and opinion. |

¶ 1    Following a bench trial in the circuit court of Cook County, defendant-appellant Javonte Richardson was convicted of unlawful use of a weapon by a felon (UUWF). On appeal, the defendant argues that (1) his prior conviction for aggravated unlawful use of a weapon (AUUW), premised on a statutory provision held unconstitutional by our supreme court, could not serve as a predicate felony to support his UUWF conviction; (2) the State's indictment for the charge of UUWF "failed to state a cause of action" because the defendant's predicate AUUW felony was based on an unconstitutional statute; and (3) the arresting police officer's pat-down search of the defendant was unconstitutional. For the following reasons, we affirm the judgment of the circuit court of Cook County.

¶ 2                                BACKGROUND

¶ 3    In 2010, in a prior case, the State charged the defendant (who was known at the time as Pierre Robinson), with a Class 4 violation of Illinois's AUUW statute. See 720 ILCS 5/24-1.6(a)(1), (a)(3)(A), (d) (West 2010). The defendant pleaded guilty to the AUUW violation, a felony, and was sentenced to two years' probation.

¶ 4    This subsequent case arose in August 2011, when the defendant was arrested in possession of a handgun following a traffic stop in Chicago, Illinois. The defendant was charged with one count of UUWF and nine counts of AUUW. The UUWF charge alleged that the defendant possessed a firearm after being adjudicated a felon, based on his 2010 guilty plea to AUUW.

¶ 5    Prior to trial, the defendant filed a motion to quash arrest and suppress evidence, arguing that the arresting officers did not have a reasonable suspicion to stop the vehicle in which the defendant was riding. On October 14, 2011, the trial court conducted a hearing on the motion to suppress. Ayokunle Akinbusuyi, the Chicago police officer who arrested the defendant, testified that he and his partner, Officer Mark Johnson, were on patrol on August 21, 2011 at 11:09 p.m. when they received a report of a vehicle theft at 742 East 79th Street. The officers drove to the address and spoke to the victim of the theft, Aaron Edwards. Edwards described the stolen vehicle as a green, Ford Taurus station wagon. Edwards was unable to provide a license plate number or any other distinguishing characteristics of the car but did tell the officers that his culinary tools were inside the vehicle.

¶ 6    Approximately 90 minutes after leaving Edwards, while driving in the area of 7400 South St. Lawrence Avenue, the officers identified a vehicle matching the description provided by Edwards. The officers stopped the vehicle and observed two individuals inside, the driver and a passenger (the defendant) in the front passenger seat. Officer Akinbusuyi approached the vehicle from the passenger's side while Officer Johnson approached the driver's side. Officer Johnson requested that the driver exit the vehicle after the driver was unable to produce a driver's license or insurance information. As the driver exited the vehicle, Officer Akinbusuyi observed the defendant mumbling and reaching "into the center console with his right hand but with his left hand it was stuffing something in his waistband." Officer Akinbusuyi testified that he found the defendant's actions unusual because "he had no reason to be doing that after I verbally told him let me see your hands." Officer Akinbusuyi testified that his "best judgment was that he was hiding something in his waistband." Based on his experience, he believed that "[i]t was mostly likely a weapon, drugs or something he didn't want me to find."

¶ 7    Officer Akinbusuyi asked the defendant to exit the vehicle, and the defendant complied. Officer Akinbusuyi handcuffed the defendant, "patted down the area," and discovered a handgun in the defendant's waistband. The officers subsequently searched the vehicle and found Edwards's culinary tools.

¶ 8    The defendant testified at the hearing on the motion to suppress that Eric Cochran, the driver of the green Ford Taurus, had picked him up approximately 10 to 15 minutes before the police stopped the vehicle. The defendant recalled that Cochran told the officers that he did not have a driver's license or insurance information. However, the defendant's testimony differed from Officer Akinbusuyi's testimony that he conducted a pat-down search. According to the defendant, the officers removed Cochran and himself from the vehicle before commencing a search of the vehicle, in which the officers found both the firearm and Edwards's culinary tools.

¶ 9    The trial court, in its findings of fact, adopted the testimony of Officer Akinbusuyi. The court initially agreed with the defendant that the officers did not have reasonable suspicion to stop the vehicle, and thus granted the motion to quash arrest and suppress evidence on October 14, 2011. The State filed a motion to reconsider, arguing that the officers had reasonable suspicion to stop the vehicle because it fit the description of a vehicle reported stolen in the area earlier that evening. After hearing argument, the trial court reversed its previous ruling and denied the defendant's motion to quash arrest and suppress evidence on November 4, 2011. At that time, the defendant elected a bench trial.

¶ 10    The court conducted a bench trial on January 18, 2012, during which Officer Akinbusuyi gave testimony consistent with his earlier hearing testimony. Also at trial, the State entered a certified copy of conviction showing that the defendant had pleaded guilty to the Class 4 AUUW felony charge in 2010. No further evidence was introduced at the bench trial. After closing arguments, the trial court found the defendant guilty of count I, the UUWF violation, and ruled that counts VI, VII, and X, merged into count I. The State declined to prosecute the remaining counts. Thus, the defendant was convicted of a single count of UUWF.

¶ 11    The defendant filed a motion for a new trial, arguing that the State failed to prove his guilt and that the trial court erred in denying his motion to quash arrest and suppress evidence. The trial court denied the defendant's motion for a new trial. On February 17, 2012, the court sentenced the defendant to four years' imprisonment, to be followed by two years of mandatory supervised release, in addition to statutory fines and costs. This appeal followed.

¶ 12    On appeal, the defendant argued that his UUWF conviction must be reversed in light of the supreme court's holding in *People v. Aguilar* that the statutory provision underlying his 2010 AUUW conviction was unconstitutional. *People v. Aguilar*, 2013 IL 112116 (concluding that the Class 4 version of the AUUW statute (720 ILCS 5/24-1.6(a)(1), (a)(3)(A), (d) (West 2008)) violated the right to bear arms under the second amendment to the United States Constitution). Separately, the defendant contended that his motion to suppress should have been granted because the pat-down search was unconstitutional.

¶ 13    On August 10, 2015, this court issued an opinion in which we reversed the defendant's conviction. *People v. Richardson*, 2015 IL App (1st) 130203. In that opinion, we agreed with the defendant that his prior AUUW offense could not serve as a predicate offense for his UUWF conviction because the AUUW offense was premised on a statute held to be unconstitutional in *Aguilar*. Because we reversed on that basis, our August 10, 2015 opinion did not address the merits of the defendant's argument regarding the pat-down search**.**

¶ 14 On September 28, 2016, the supreme court entered a supervisory order, directing us to reconsider our judgment in light of its decision in *People v. McFadden*, 2016 IL 117424. On December 1, 2016, we entered an order vacating our August 10, 2015, opinion.

¶ 15 ANALYSIS

¶ 16 After reconsidering the case in light of the supreme court's decision in *McFadden*, we now conclude that the defendant's arguments relying on *Aguilar* lack merit. First, he contends that the State did not prove that he had a prior felony conviction at the time of his 2011 arrest—a necessary element of the UUWF offense—because his 2010 felony conviction for AUUW was premised on the statutory provision declared unconstitutional in *Aguilar*. Similarly, he argues that the State's indictment for UUWF "fail[ed] to state a cause of action" because his 2010 felony AUUW conviction was "void *ab initio*" in light of *Aguilar*.

¶ 17 We find that these arguments are without merit, in light of the supreme court's *McFadden* decision, which addressed whether a prior AUUW conviction (under the statute held unconstitutional by *Aguilar*) may support a UUWF conviction. *McFadden*, 2016 IL 117424, ¶ 1. *McFadden* held that, notwithstanding *Aguilar,* a defendant's prior AUUW conviction may serve as a predicate felony to support his UUWF conviction, unless that prior AUUW conviction has been vacated. See *id.* ¶¶ 29-31.

¶ 18 *McFadden* is directly on point and compels us to reject the defendant's arguments based on *Aguilar*. Under *McFadden*, a prior AUUW felony conviction, although subject to vacatur under *Aguilar*, may still serve as a predicate felony for UUWF until that prior felony has been vacated. *Id.* There is no dispute that, at the time of the defendant's arrest and conviction in this case, his prior felony conviction for AUUW had not been vacated. Thus, his felon status remained, and the prior AUUW felony could support his UUWF conviction. Accordingly, we reject the defendant's arguments that (1) the State could not use the prior AUUW offense to prove his guilt of UUWF or (2) that the indictment for UUWF "failed to state a cause of action" because it relied on the prior AUUW conviction.

¶ 19 Having concluded that *McFadden* permitted the use of the defendant's prior AUUW felony as a predicate for the UUWF conviction, we turn to the defendant's remaining arguments. Specifically, the defendant contends that his motion to suppress evidence and quash arrest should have been granted because the arresting officer's pat-down search was unconstitutional.

¶ 20 His argument is two-fold. First, he urges that the pat-down search was not justified pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968), because Officer Akinbusuyi lacked a reasonable belief that the defendant was armed and dangerous. Secondly, he argues that the pat-down was a "search incident to an arrest" conducted without probable cause. We find these arguments are without merit.

¶ 21 A two-part standard applies to the review of a decision on a motion to suppress. *People v. Colyar*, 2013 IL 111835, ¶ 24. "We afford great deference to the trial court's factual findings, and will reverse those findings only if they are against the manifest weight of the evidence. [Citation.] We review *de novo*, however, the trial court's ultimate legal ruling on whether suppression is warranted. [Citation.]" *Id.* "[C]ourts reviewing the propriety of these types of investigatory stops must decide each case on its own unique facts." *Id.* ¶ 37 (citing *Terry*, 392 U.S. at 30-31).

- 4 -

¶ 22    "Both the fourth amendment and the Illinois Constitution of 1970 guarantee the right of individuals to be free from unreasonable searches and seizures." *Id.* ¶ 31 (citing U.S. Const., amend. IV, and Ill. Const. 1970, art. I, § 6). "Courts have divided police-citizen encounters into three tiers: (1) arrests which must be supported by probable cause; (2) brief investigative detentions, or '*Terry* stops,' which must be supported by a reasonable, articulable suspicion of criminal activity; and (3) encounters that involve no coercion or detention and thus do not implicate fourth amendment interests. [Citations.]" *People v. Luedemann*, 222 Ill. 2d 530, 544 (2006).

¶ 23    In *Terry*, the United States Supreme Court held "that a brief investigatory stop, even in the absence of probable cause, is reasonable and lawful under the fourth amendment when a totality of the circumstances reasonably lead the officer to conclude that criminal activity may be afoot and the subject is armed and dangerous." *Colyar*, 2013 IL 111835, ¶ 32 (citing *Terry*, 392 U.S. at 30). *Terry* further specifies when a pat-down search for weapons during an investigative stop is permissible: if " 'nothing in the initial stages of the encounter serves to dispel [the officer's] reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him.' " *Id.* ¶ 37 (quoting *Terry*, 392 U.S at 30). "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry*, 392 U.S. at 27. "[I]n determining whether the officer acted reasonably in such circumstances, due weight must be given *** to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Id.*

¶ 24    The defendant does not suggest that, in adopting Officer Akinbusuyi's hearing testimony, the trial court's factual findings were against the manifest weight of the evidence. Nevertheless, he argues that the circumstances described in that testimony did not justify a reasonable belief that the defendant was armed and dangerous.

¶ 25    The defendant does not explicitly argue (as he did in the trial court) that the initial traffic stop was unjustified.[1] However, he asserts that, in reviewing the legality of the pat-down search, we may not consider the reason why the police stopped the vehicle. He claims: "Although the officer[s] may have suspected that the vehicle they pulled over may have been" the vehicle reported stolen 90 minutes earlier, "they had absolutely no proof of it at the time they pulled it over." He further argues that, because he was "merely the passenger" and did not control the vehicle, "the status of the car plays no part in the search of [the defendant] by Officer Akinbusuyi."

¶ 26    Regardless of whether the officers had yet found proof that the vehicle was stolen, in considering the "totality of circumstances" (*Colyar*, 2013 IL 111835, ¶ 32), it was reasonable for Officer Akinbusuyi to take into account that the vehicle matched the description of a car stolen approximately 90 minutes earlier. See *People v. Simpson*, 2015 IL App (1st) 130303, ¶ 25 (finding that the *Terry* stop of a vehicle shortly after a reported home invasion was

---

[1]Defendant's reply brief asserts that he "makes no concession concerning the legality of the stop" and that "whether the police had the reasonable suspicion legally necessary for them to stop the car in this case is clearly in question." However, as no such argument was raised in his initial brief, this point is forfeited. Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013).

supported by the fact that the vehicle fit the victim's description of the suspects' car). This fact could contribute to the officer's reasonable suspicion that the occupants were involved in criminal activity and were potentially armed and dangerous.

¶ 27 More importantly, Officer Akinbusuyi testified that, after the driver was asked to exit the vehicle and the defendant was asked to show his hands, the defendant reached toward the center console with one hand and used his other hand to put something into his waistband. Officer Akinbusuyi testified that based on his experience, he believed the defendant was attempting to hide something, "most likely a weapon, drugs or something he didn't want me to find." The defendant suggests that, to support a pat-down search, the officer needed to testify to a more definite belief that the defendant was armed. However, we find his belief that the defendant was "mostly likely" hiding a weapon indicated a sufficient suspicion to warrant the pat-down search. We reiterate that an arresting officer need not be "certain" that the defendant is armed to have a reasonable suspicion, and that the officer may rely on "reasonable inferences in light of his experience." *Terry*, 392 U.S. at 27. The defendant's furtive movements—especially after being asked to keep his hands visible—could support the reasonable suspicion that the defendant was armed. We conclude that the pat-down search was justified under the *Terry* standard, where (1) the police officers encountered two individuals at night in a vehicle that matched the description of a recently stolen car and (2) the defendant's movements in the car supported a reasonable suspicion that he was armed or had access to a weapon in the vehicle.

¶ 28 Alternatively, the defendant argues that the pat-down search was an invalid "search incident to an arrest" made without probable cause. He argues that the "mere fact that [he] was in a car that the officers suspected was stolen and his furtive movement toward his waistband did not give Officer Akinbusuyi probable cause to handcuff him, search him and find a weapon in his waistband." We reject his contention that he was arrested before the pat-down search. Rather, we reiterate that the search was a *Terry* stop supported by reasonable suspicion.

¶ 29 The defendant's argument relies on the use of handcuffs during the search. However, "handcuffing does not automatically transform a *Terry* stop into an illegal arrest." *Colyar*, 2013 IL 111835, ¶ 46. "[T]he propriety of handcuffing during a *Terry* stop depends on the circumstances of each case." *Id.* (concluding that handcuffing was reasonable where officers were "outnumbered, it was dusk, and they could reasonably suspect that one or more of the three individuals in defendant's car possessed a gun or would be able to access a gun inside the vehicle if they were not secured by handcuffs"). In this case, based on the factual circumstances already described, we find that the handcuffing of the defendant was reasonable.

¶ 30 As we conclude that the use of handcuffs was proper in this *Terry* stop, we reject the defendant's suggestion that this was an arrest requiring probable cause. See *id.* ¶ 50 ("The focus in *Terry* on protective weapon searches is the officer's reasonable belief that his safety or the safety of others is in danger *regardless* of whether probable cause exists to arrest for a crime." (Emphasis in original.)). Thus, we reject the defendant's arguments that the pat-down search was unconstitutional.

¶ 31 For the foregoing reasons, we affirm the defendant's conviction.

¶ 32 Affirmed.