# Illinois Official Reports

## Appellate Court

---

## *People v. Carter*, 2019 IL App (1st) 170803

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DAVID CARTER, Defendant-Appellant. |
| District & No. | First District, Second Division<br>No. 1-17-0803 |
| Filed<br>Modified upon<br>denial of rehearing | October 22, 2019<br><br>March 10, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 16-CR-4639; the Hon. Arthur F. Hill, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James E. Chadd, Patricia Mysza, and Sean Collins-Stapleton, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Brian A. Levitsky, and Ahmed Islam, Assistant State's Attorneys, of counsel), for the People. |

JUSTICE PUCINSKI delivered the judgment of the court, with opinion.
Presiding Justice Fitzgerald Smith and Justice Coghlan concurred in the judgment and opinion.

## OPINION

¶ 1     Following a bench trial, defendant, David Carter, was convicted of the offense of armed habitual criminal and was sentenced to nine years' imprisonment. On appeal, defendant challenges his conviction, arguing that the circuit court erred in denying his pretrial motion to quash his arrest and suppress evidence and that the State failed to prove his guilt of the offense beyond a reasonable doubt. For the reasons explained herein, we affirm the judgment of the circuit court.

¶ 2                                              BACKGROUND

¶ 3     On March 9, 2016, during the course of an encounter with Chicago police officers, a handgun was recovered from defendant's person. Defendant was subsequently charged with a number of weapons offenses, including armed habitual criminal, aggravated unlawful use of a weapon by a felon, and aggravated unlawful use of a weapon.

¶ 4     Following his arrest, defendant filed a motion to suppress the gun and quash his arrest, in which he argued that the officers' warrantless search and seizure of his person was unlawful. Specifically, he argued that when the officers stopped him, they lacked reasonable suspicion or probable cause to believe that he had committed or was about to commit a criminal offense and thus the search and seizure of his person violated his constitutional rights. The trial court subsequently presided over a hearing on defendant's motion.

¶ 5     At the hearing, Chicago police officer Robert Luzadder testified that on March 9, 2016, at approximately 11:36 p.m., he and his partner, Officer Lee Anthony Brown, were on routine patrol when they received a message from the Office of Emergency Management and Communication (OEMC) about an emergency call placed by a "person who wished to remain anonymous." The unidentified caller had reported observing a white male wearing a black "hoodie" in the vicinity of 33rd and Wallace Streets. According to the unidentified caller, the man was in possession of a gun and was "swinging at" two white females. Approximately two to three minutes after receiving the OEMC message, the officers arrived at the location specified by the caller; however, they did not observe anyone matching the description of the man provided by the caller. Approximately two to four minutes later, the officers received additional information from OEMC that the same unknown caller was now reporting that the man and the two women were walking in the vicinity of 3100 South Lowe Avenue. In response, the officers relocated to the new location, which was approximately two blocks away.

¶ 6     Once there, Officer Luzadder observed defendant, who matched the description of the man provided by the unknown caller. Defendant was holding the right side of his waistband as he was walking. Based on his 22 years of experience in law enforcement, Officer Luzadder believed that the manner in which defendant was walking suggested that he was "attempting to conceal a firearm underneath his clothing." As a result, he addressed defendant and requested him to approach the squad car with his hands raised. Defendant complied with his

request and placed his hands on the squad car. Because the anonymous caller had reported that defendant was armed with a firearm and because defendant had been walking with his right hand on his waist, Officer Luzadder performed a protective pat down of defendant's person. During the course of the pat down, he felt what he believed to be "the handle of a firearm" near defendant's waist. When he raised defendant's shirt, Officer Luzadder confirmed that defendant had been concealing a firearm in his waistband. He recovered the "loaded nickel revolver" and placed defendant into custody. Officer Luzadder never drew his weapon on defendant or activated his vehicle's emergency equipment during the encounter. He admitted, however, that he did put his hand on his own police issued firearm as defendant approached the police car. He did not know whether his partner had drawn his weapon.

¶ 7        Officer Luzadder also admitted that he never saw defendant with a firearm until he recovered it from his waistband during the protective pat-down. Moreover, at the time that he encountered defendant, he had not been issued a search warrant or an arrest warrant and had not observed defendant violating any state or federal laws. He also conceded that not everyone who holds their waistband in the manner that he had observed defendant doing is concealing a firearm. Finally, Officer Luzadder admitted that he never had any contact with the unknown caller. Although OEMC had recorded the phone number the caller was using to place the emergency calls, Officer Luzadder did not know the identity of the person who placed those calls.

¶ 8        Following Officer Luzadder's testimony, the parties delivered their respective arguments regarding the merit of defendant's suppression motion. After hearing those arguments and briefly recounting the evidence presented, the court denied defendant's motion to suppress, "find[ing] no offense to the 4th Amendment here." The cause then proceeded to a bench trial.

¶ 9        At trial, the parties stipulated to the testimony that Officer Luzadder had provided at the earlier suppression hearing. Thereafter, the State called upon him to provide additional live testimony about his encounter with defendant on the evening of March 9, 2016. Consistent with the testimony he provided at the suppression hearing, Officer Luzadder testified that he and his partner first observed defendant near 3110 South Lowe Avenue and that he recovered a "loaded five shot revolver pistol" from defendant during the protective pat-down of his person. In addition, Officer Luzadder further testified that as he was recovering the weapon, defendant "made a spontaneous statement stating *** I'm a 2-6, I'm on parole and I use this from [*sic*] protection against the SDs." He subsequently inventoried the gun in accordance with department protocol.

¶ 10        On cross-examination, Officer Luzadder admitted that he did not memorialize defendant's spontaneous statement for him to sign; however, he did include the statement in the case report that he completed of the incident. He acknowledged that defendant had not been read his *Miranda* rights prior to making that statement.

¶ 11        Following Officer Luzadder's testimony, the State presented evidence of defendant's criminal history. Specifically, the State presented a certified copy of conviction under case No. 10-CF-367 for the offense of armed robbery and a certified copy of conviction in case No. 09-CF-2251 for the offense of aggravated battery.

¶ 12        The parties then stipulated that defendant did not possess a valid Firearm Owner's Identification (FOID) card or a concealed carry license on the date that Officer Luzadder recovered a firearm from his person.

¶ 13    After presenting the aforementioned evidence, the State rested its case-in-chief. Defendant elected not to testify, and the defense rested without calling any witnesses. The parties then delivered closing arguments. After hearing those arguments and recounting the evidence presented, the court concluded that "the State has met [its] burden of proof beyond a reasonable doubt" and found defendant guilty of armed habitual criminal, unlawful use of a weapon by a felon, and aggravated unlawful use of a weapon. Defendant's posttrial motion was denied and the cause proceeded to a sentencing hearing where the court, after hearing the evidence presented in aggravation and mitigation, sentenced defendant to nine years' imprisonment for the offense of armed habitual criminal. The other counts were merged. This appeal followed.

¶ 14                                   ANALYSIS
¶ 15                   Motion to Quash Arrest and Suppress Evidence
¶ 16    On appeal, defendant first argues that the circuit court erred in denying his pretrial motion to quash his arrest and suppress evidence. He argues that the loaded handgun that formed the basis for his arrest and conviction "was obtained as a result of [his] unlawful detention by Officer Robert Luzadder, who based the seizure on an uncorroborated anonymous tip in violation of *Florida v. J.L.*, 529 U.S. 266, 271 (2000)." Because the gun and his subsequent incriminating statement were both obtained in contravention of his fourth amendment rights, defendant argues that the court's failure to grant his motion to suppress warrants reversal of his armed habitual criminal conviction.

¶ 17    The State, in turn, submits that the circuit court properly denied defendant's motion to quash arrest and suppress evidence because Officer Luzadder's observations and experience as a police officer "combined with the information provided by [OEMC] gave [him] a reasonable basis to perform a protective pat-down of defendant" during which the firearm was recovered.

¶ 18    On a motion to suppress, a defendant bears the burden of proving that the search and seizure were unlawful. *People v. Clark*, 394 Ill. App. 3d 344, 347 (2009). If a defendant makes a *prima facie* showing that he was doing nothing unusual or suspicious to justify a warrantless search and seizure of his person, the burden then shifts to the State to present evidence to justify the search and seizure. *People v. Wise*, 2019 IL App (2d) 160611, ¶ 56; *People v. Linley*, 388 Ill. App. 3d 747, 749 (2009). A circuit court's ruling on a motion to suppress is subject to a bifurcated two-prong standard of review. See *Ornelas v. United States*, 517 U.S. 690, 699 (1996); *People v. Johnson*, 237 Ill. 2d 81, 88 (2010). Pursuant to this standard, a reviewing court will afford great deference to the circuit court's factual findings and will disregard those findings only where they are against the manifest weight of the evidence. *Johnson*, 237 Ill. 2d at 88; *People v. Lopez*, 2013 IL App (1st) 111819, ¶ 17. "This deferential standard of review is grounded in the reality that the circuit court is in a superior position to determine and weigh the credibility of witnesses, observe the witnesses' demeanor, and resolve conflicts in their testimony." *People v. Pitman*, 211 Ill. 2d 502, 512 (2004). The circuit court's ultimate legal finding as to whether suppression is warranted, however, is subject to *de novo* review. *People v. Colyar*, 2013 IL 111835, ¶ 24; *People v. Bartelt*, 241 Ill. 2d 217, 226 (2011). Accordingly, "[a] court of review 'remains free to engage in its own assessment of the facts in relation to the issues presented and may draw its own conclusions when deciding what relief should be granted.' " *People v. Gherna*, 203 Ill. 2d 165, 175-76 (2003) (quoting *People v. Crane*, 195 Ill. 2d 42, 51 (2001)). When conducting this analysis, a reviewing court may consider the evidence

presented at trial in addition to the evidence presented during the earlier suppression hearing. *People v. Almond*, 2015 IL 113817, ¶ 55.

¶ 19     The right to be free from unlawful searches and seizures is protected by both the federal and state constitutions. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6; *Bartelt*, 241 Ill. 2d at 225-26. "The 'essential purpose' of the fourth amendment is to impose a standard of reasonableness upon the exercise of discretion by law enforcement officers to safeguard the privacy and security of individuals against arbitrary invasions." *People v. McDonough*, 239 Ill. 2d 260, 266-67 (2010) (quoting *Delaware v. Prouse*, 440 U.S. 648, 653-54 (1979)). This constitutional guarantee "applies to all seizures of the person, including seizures that involve only a brief detention short of traditional arrest." *People v. Thomas*, 198 Ill. 2d 103, 108 (2001).

¶ 20     To be reasonable, a search and seizure "generally requires a warrant supported by probable cause." *Id.* However, in its seminal ruling in *Terry v. Ohio*, 392 U.S. 1 (1968), the United States Supreme Court created a limited exception to the probable cause requirement and held that a police officer "may conduct a brief, investigatory stop of a citizen [unsupported by probable cause] when the officer has a reasonable, articulable suspicion of criminal activity and such suspicion amounts to more than a mere 'hunch.' " *McDonough*, 239 Ill. 2d at 268; *Terry*, 392 U.S. at 27.

> "Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause." *Alabama v. White*, 496 U.S. 325, 330 (1990).

Accordingly, to justify a *Terry* stop, an officer must simply "be able to point to specific and articulable facts which, taken together with rational inferences from those facts," supports the conclusion that an individual has committed or is about to commit a crime. *Terry*, 392 U.S. at 21; *People v. Magallanes*, 409 Ill. App. 3d 720, 725 (2011). "The determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior, and due weight must be given to the reasonable inferences the officer is entitled to draw from the facts in light of his experience." *People v. Thomas*, 2019 IL App (1st) 170474, ¶ 19; see also *Prado Navarette v. California*, 572 U.S. ___, ___, 134 S. Ct. 1683, 1690 (2014) (noting that reasonable suspicion depends upon the commonsense "factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act" (internal quotation marks omitted)). Ultimately, whether an investigatory stop is reasonable is judged by the totality of the circumstances (*People v. Jackson*, 348 Ill. App. 3d 719, 729 (2004)) using an objective standard, and only the facts known to the officer at the time of the stop may be considered (*Linley*, 388 Ill. App. 3d at 749).

¶ 21     Although a police officer's personal observations may provide the officer with the reasonable suspicion necessary to effectuate a lawful *Terry* stop, reasonable suspicion is not *limited* to the information derived from an officer's personal observations. *Adams v. Williams*, 407 U.S. 143, 147 (1972) (rejecting the argument that reasonable suspicion for an investigative stop can only be based upon an officer's personal observations). Indeed, an officer may also obtain reasonable suspicion and initiate a *Terry* stop based upon information provided by members of the public, including a known or unknown informant, a victim, an eyewitness, or a concerned citizen. *People v. Nitz*, 371 Ill. App. 3d 747, 751 (2007); *Jackson*, 348 Ill. App.

3d at 730. Because third-party tips "vary greatly in their value and reliability" (*Adams*, 407 U.S. at 147), courts have recognized that there is a "spectrum upon which tips are classified" (*People v. Sanders*, 2013 IL App (1st) 102696, ¶ 19). For example, information provided by a concerned citizen is generally considered to be more credible than that provided by a confidential informant who provides information in exchange for payment or another form of personal gain. *Linley*, 388 Ill. App. 3d at 750; *Nitz*, 371 Ill. App. 3d at 752. Similarly, information gleaned from a known individual is generally considered to constitute stronger evidence than that provided by one who is anonymous. See *Nitz*, 371 Ill. App. 3d at 751. Indeed, courts have recognized that anonymous tips alone seldom provide law enforcement officers with the reasonable suspicion necessary to initiate a lawful investigatory stop because such tips generally fail to "demonstrate[ ] the informant's basis of knowledge or veracity." *White*, 496 U.S. at 329. In such cases, an officer's corroboration of information contained in the anonymous tip becomes "especially important." *Nitz*, 371 Ill. App. 3d at 751; see also *Linley*, 388 Ill. App. 3d at 750. Nonetheless, even " 'when information comes from a named witness, it remains the case that a minimum of corroboration or other verification of the reliability of the information is required.' " *Nitz*, 371 Ill. App. 3d at 751-52 (quoting *Village of Mundelein v. Thompson*, 341 Ill. App. 3d 842, 851 (2003)); see also *Jackson*, 348 Ill. App. 3d at 730 (recognizing that " 'the mere fact that a citizen is identified will not automatically impart credibility and reliability to his statement' " (quoting *People v. Ertl*, 292 Ill. App. 3d 863, 873 (1997))). When it comes to the corroboration of third-party tips, courts have recognized that the "[c]orroboration of innocent details or of information that is readily known or knowable is of little value," whereas "a showing that an informant is able to predict a defendant's future behavior lends credence to the tip." *Nitz*, 371 Ill. App. 3d at 752. Ultimately, the issue of whether the information contained in a tip is sufficient to support an investigatory stop is dependent upon the totality of the circumstances, not a rigid test. *Linley*, 388 Ill. App. 3d at 750; *Nitz*, 371 Ill. App. 3d 751.

¶ 22    Keeping these principles in mind, we find that Officer Luzadder's search and seizure of defendant did not run afoul of the fourth amendment. The record establishes that Officer Luzadder encountered defendant after an unknown caller placed two separate 911 calls. In the first call, the caller reported that a white male wearing a black hoodie was in possession of a gun and was "swinging at" two white females. The caller relayed that the three individuals were near the intersection of 32nd and Wallace Streets. In the second call, placed minutes later, the caller provided an updated location where the individuals could be found: 3100 South Lowe Avenue. The updated location was approximately two blocks north of the first location identified by the caller.

¶ 23    Although there is no dispute that the identity of the caller is unknown, there is some authority that a tip conveyed through an emergency number should not be considered to be "truly anonymous" and should be viewed with less skepticism even if the caller does not specifically identify himself or herself because such callers are likely aware that authorities have the means to ascertain the phone number from which the call was placed. *Linley*, 388 Ill. App. 3d at 750 (citing *People v. Shafer*, 372 Ill. App. 3d 1044, 1050-51 (2007)); see also *Prado Navarette*, 572 U.S. at ___, 134 S. Ct. at 1689 (finding that an unknown caller's use of the 911 emergency system was an "indicator of veracity" because the system "has some features that allow for identifying and tracing callers, and thus provides some safeguards against making false reports with immunity"). Indeed, in this case, the phone number from which the caller

- 6 -

placed the two calls at issue was recorded. Ultimately, regardless of how the caller is categorized, there is no dispute that Officer Luzadder was required to engage in some corroboration or other verification of the information provided by the tipster prior to initiating the stop. See *Nitz*, 371 Ill. App. 3d at 751-52.

¶ 24 Based on the record, it is evident that Officer Luzadder did so. At the suppression hearing, Officer Luzadder testified that he observed defendant, who matched the physical description provided by the unknown caller, at the updated location that the caller had provided, within minutes of the second call being placed. Although it is true that Officer Luzadder did not mention observing defendant in the presence of two Caucasian females, defendant does not dispute that he matched the description of the man discussed by the caller or that he was found in the specific location identified by the caller. More importantly, in addition to corroborating the location and physical description of the person identified by the caller, Officer Luzadder also observed defendant walking in a manner that suggested that he was concealing a firearm, which served to further corroborate the tipster's account that he had swung at two females while armed with a firearm. Specifically, Officer Luzadder testified that he observed defendant holding the right side of his waistband as he was walking, which based on his 22 years of experience in law enforcement, suggested that he was "attempting to conceal a firearm underneath his clothing." Moreover, Officer Luzadder's reasonable suspicion that defendant was armed with a firearm justified the protective pat-down of his person to ensure his own safety and the safety of others. See *People v. Sorenson*, 196 Ill. 2d 425, 432 (2001) ("when an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or others, the officer may conduct a pat-down search to determine whether the person is in fact carrying a weapon" (citing *Terry*, 392 U.S. at 24)); see also *People v. Richardson*, 2017 IL App (1st) 130203-B, ¶ 27 (finding that the defendant's "furtive movements" supported the officer's belief that the defendant was " 'most likely' " hiding a firearm and justified a pat-down search during the course of a *Terry* stop). Because the firearm was recovered during a lawful search and seizure of defendant, we conclude that the circuit court did not err in denying his motion to suppress.

¶ 25 In so finding, we are unpersuaded by defendant's argument that the United States Supreme Court's ruling in *Florida v. J.L.*, 529 U.S. 266 (2000), compels a different result. In that case, an anonymous telephone caller[1] informed police that "a young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun." *Id.* at 268. When officers arrived at the bus stop identified by the caller, they observed three black males, including J.L., who was the only individual wearing a plaid shirt. *Id.* The officers did not observe a firearm on J.L.'s person and did not observe him make any "threatening or otherwise unusual movements." *Id.* Nonetheless, one of the officers ordered J.L. to raise his hands in the air, frisked him, and ultimately recovered a handgun from J.L.'s pocket. *Id.* On review, the United States Supreme Court concluded that the seizure and search of J.L.'s person was improper because the anonymous tip lacked the requisite indicia of reliability to provide the officers with reasonable suspicion that J.L. was carrying a firearm and because the only evidence corroborated by the officers before initiating the seizure were innocent details. *Id.* at 271-74. With respect to the call itself, the court noted that the caller "provided no predictive information

---

[1]Although there is no dispute that the tip at issue was made via a phone call, there is no evidence that the anonymous caller in *J.L.* used an emergency phone number to make the tip.

and therefore left the police without means to test the informant's knowledge or credibility"; rather, "[a]ll the police had to go on in this case was the bare report of an unknown, unaccountable informant who neither explained how he knew about the gun nor supplied any basis for believing he had inside information about J.L." *Id.* at 271. Although officers did corroborate that an individual matching the caller's description was present at the specific bus stop identified by the caller, the court reasoned that:

> "An accurate description of a subject's readily observable location and appearance is of course reliable in [a] limited sense: It will help the police correctly identify the person whom the tipster means to accuse. Such a tip, however, does not show that the tipster has knowledge of concealed criminal activity. The reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person." *Id.* at 272.

Ultimately, because the officers failed to corroborate that the tip was reliable in its assertion of illegality, the court concluded that the search and seizure were unlawful.

¶ 26 Here, in contrast, Officer Luzadder's corroboration was not limited to innocuous details of the unknown caller's tips to an emergency phone number. Not only did he encounter defendant in the location provided by the caller and wearing clothing described by the caller, but he also independently observed behavior that suggested that defendant was concealing a firearm, which the caller had stated was in his possession as he swung at two females. That is, he observed defendant walking in a manner, which in Officer Luzadder's extensive experience as a law enforcement officer, suggested that he was attempting to conceal a firearm underneath his clothing. Ultimately, because Officer Luzadder engaged in corroboration of the assertion of illegality provided by the tipster and possessed reasonable suspicion that defendant was engaged in criminal activity at the time of the *Terry* stop, this case is distinguishable from *J.L.* Moreover, because Officer Luzadder's corroboration of the caller's tip led him to believe that that defendant was armed with and concealing a firearm, he was justified in performing a protective pat-down of defendant's person. See *Richardson*, 2017 IL App (1st) 130203-B, ¶ 27 (upholding a protective pat-down search where the defendant's "furtive movements" led the officer to conclude that he was " 'most likely' " concealing a weapon).

¶ 27                                    Sufficiency of the Evidence

¶ 28 Defendant next contests the sufficiency of the evidence. Specifically, he contends that the State failed to meet its burden of proving him guilty of the offense of armed habitual criminal because it failed to establish that he had previously been convicted of two qualifying predicate offenses as required by the armed habitual criminal statute.

¶ 29 The State, in turn, responds that support for defendant's claim is not found within the four corners of the record on appeal, and as such, his "conviction for armed habitual criminal must be affirmed on direct appeal."

¶ 30 Due process requires proof beyond a reasonable doubt to convict a criminal defendant. *People v. Ross*, 229 Ill. 2d 255, 272 (2008). In reviewing a challenge to the sufficiency of the evidence, it is not a reviewing court's role to retry the defendant; rather, the court must view the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found each of the essential elements of the crime beyond a reasonable doubt. *People v. Ward*, 215 Ill. 2d 317, 322 (2005); *People v. Joiner*, 2018 IL App (1st) 150343, ¶ 58; *People v. Hayashi*, 386 Ill. App. 3d 113, 122 (2008). This standard is applicable

to all criminal cases regardless of the nature of the evidence at issue. *People v. Bush*, 214 Ill. 2d 318, 326 (2005). In a bench trial, the trial court is responsible for evaluating the credibility of the witnesses, resolving conflicts and inconsistencies in the evidence, and determining the weight to afford, and the inferences to be drawn, from the evidence. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009). A reviewing court may not substitute its judgment for that of the trier of fact on such matters (*People v. Campbell*, 146 Ill. 2d 363, 375 (1992)) and will not reverse a defendant's conviction unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt as to his guilt (*People v. Bradford*, 2016 IL 118674, ¶ 12).

¶ 31 Section 24-1.7 of the Criminal Code of 2012 (Code) sets forth the offense of armed habitual criminal and provides, in pertinent part, as follows:

"§ 24-1.7. Armed habitual criminal.

(a) A person commits the offense of being an armed habitual criminal if he or she receives, sells, possesses, or transfers any firearm after having been convicted a total of 2 or more times of any combination of the following offenses:

(1) a forcible felony as defined in Section 2-8 of this Code;

(2) unlawful use of a weapon by a felon; aggravated unlawful use of a weapon; aggravated discharge of a firearm; vehicular hijacking; aggravated vehicular hijacking; aggravated battery of a child ***; intimidation; aggravated intimidation; gunrunning; home invasion; or aggravated battery with a firearm ***; or

(3) any violation of the Illinois Controlled Substances Act or the Cannabis Control Act that is punishable as a Class 3 felony or higher." 720 ILCS 5/24-1.7(a) (West 2016).

¶ 32 Pursuant to the plain language of the statute, in order to sustain a conviction for the offense of armed habitual criminal, it is thus incumbent upon the State to prove not only that the defendant received, sold, possessed, or transferred a firearm but that he was previously convicted of two qualifying predicate offenses. *Id.*; *People v. White*, 2015 IL App (1st) 131111, ¶ 28 ("qualifying convictions are elements of the offense" of armed habitual criminal).

¶ 33 In this case, the information charging defendant with armed habitual criminal cited his knowing possession of a firearm after having been convicted of the following two predicate offenses: "the offense of armed robbery, under case number 10[-]CF-367, and the offense of aggravated battery, under case number 09[-]CF-2251." At trial, in order to prove defendant had two predicate offenses necessary to support a finding of guilt of the offense of armed habitual criminal, the State presented certified copies of his prior convictions for armed robbery and aggravated battery.

¶ 34 Given that neither armed robbery nor aggravated battery is included in the list of offenses specifically enumerated in subsections (a)(2) or (a)(3) of the armed habitual criminal statute, those offenses must constitute "forcible felonies" in order to qualify as predicate offenses for purposes of the armed habitual criminal statute. See *People v. Ephraim*, 2018 IL App (1st) 161009, ¶ 12 (in order for a crime not specifically delineated in subsections (a)(2) or (a)(3) of the armed habitual criminal statute to constitute a qualifying offense under the statute, it must be considered a "forcible felony" as defined by statute).

¶ 35 Pursuant to section 2-8 of the Code, a "forcible felony" is defined as

"treason, first degree murder, second degree murder, predatory criminal sexual assault of a child, aggravated criminal sexual assault, criminal sexual assault, robbery,

- 9 -

burglary, residential burglary, aggravated arson, arson, aggravated kidnaping, kidnaping, *aggravated battery resulting in great bodily harm or permanent disability or disfigurement and any other felony which involves the use or threat of physical force or violence against any individual*." (Emphasis added.) 720 ILCS 5/2-8 (West 2016).

¶ 36    Initially, we note that defendant does not dispute that his armed robbery conviction was a proper qualifying predicate offense for purposes of the armed habitual criminal statute. The offense of armed robbery occurs when a person commits a robbery, which entails taking another's property "*by the use of force or by threatening the imminent use of force*" (emphasis added) (*id.* § 18-1(a)) while being armed with a firearm or other dangerous weapon (*id.* § 18-2). The offense of armed robbery, by definition, thus necessarily contemplates the use or threat of physical force or violence against the victim and, as such, constitutes a forcible felony under 2-8 of the Code. *Id.* §§ 18-1, 18-2; see also *People v. Belk*, 203 Ill. 2d 187, 196 (2003) (recognizing that the fact that an individual is armed "necessarily implies that [he] contemplated that the use of force or violence against an individual might be involved and that [he was] willing to use such force or violence" during the commission of an offense, such that the crime constitutes a forcible felony pursuant to section 2-8 of the Code (emphasis omitted)). Given that there is no dispute that armed robbery is inherently a forcible felony, the basis for defendant's challenge to the sufficiency of the evidence solely pertains to his prior conviction for aggravated battery.

¶ 37    The offense of aggravated battery contains many categories. See 720 ILCS 5/12-3.05 (West 2016). Indeed, an offender will be charged with the offense of aggravated battery when he commits a battery, which involves inflicting bodily harm on another or making physical contact of an insulting or provoking nature with another person (*id.* § 12-3), and one or more aggravating factor is present. *Id.* § 12-3.05. The aggravating factor may include the severity of the injury inflicted on the victim, such as great bodily harm or permanent disfigurement (*id.* § 12-3.05(a)); the location where the conduct occurred, such as a public way, sports venue, or domestic violence shelter (*id.* § 12-3.05(c)); the status of the victim, such as a child, a peace officer, an elderly victim, or one who is pregnant (*id.* § 12-3.05(b), (d)); and the use of a firearm or other weapon or device during the battery (*id.* § 12-3.05(e), (f)).

¶ 38    Although there are many types of aggravated batteries, the forcible felony definition contained in section 2-8 of the Code only includes "aggravated battery resulting in great bodily harm or permanent disability or disfigurement." *Id.* § 2-8. This court has repeatedly recognized that not every aggravated battery is one that results in great bodily harm or permanent disability or disfigurement of the victim and that aggravated batteries that are based on other aggravating factors are not included in the definition of forcible felonies set forth in section 2-8 of the Code. See, *e.g.*, *Ephraim*, 2018 IL App (1st) 161009, ¶ 14 (finding that the "defendant's conviction for aggravated battery to a peace officer without proof that the underlying battery resulted in great bodily harm or permanent disability or disfigurement does not qualify as a forcible felony under section 2-8"); *People v. Smith*, 2016 IL App (1st) 140496, ¶ 11 (concluding that "where [the] defendant's prior conviction of aggravated battery to a peace officer was not based on great bodily harm or permanent disability or disfigurement, we find that it was not within the statutory definition of a forcible felony").

¶ 39    This court has further held that aggravated batteries that are based on aggravating factors other than great bodily harm or permanent disability or disfigurement do not fall within the forcible felony definition's residual clause, which includes "any other felony which involves

the use or threat of physical force or violence against any individual." 720 ILCS 5/2-8 (West 2016). See, *e.g.*, *Ephraim*, 2018 IL App (1st) 161009, ¶ 15; *Smith*, 2016 IL App (1st) 140496, ¶ 11; *People v. Schmidt*, 392 Ill. App. 3d 689, 695-96 (2009). As we explained in *Schmidt*,

> "by using the word 'other' after listing 14 specific felonies [in the forcible felony definition], the legislature clearly intended the residual category to refer to felonies not previously specified. Where the statute specifically enumerated aggravated battery resulting in great bodily harm or permanent disability or disfigurement, 'other felony' must refer to felonies other than aggravated battery." *Schmidt*, 392 Ill. App. 3d at 695.

We found further support for our conclusion by reviewing the legislative history of the forcible felony statute, which prior to 1990, provided that *all* aggravated batteries were forcible felonies. *Id.* at 696. In a 1990 amendment to the statute, however, the legislature added the phrase " 'resulting in great bodily harm or permanent disability or disfigurement' " after " 'aggravated battery.' " *Id.* (quoting Pub. Act 86-291 (eff. Jan. 1, 1990) (amending Ill. Rev. Stat. 1987, ch. 38, § 2-8)). We reasoned that "by enacting the 1990 amendment, the legislature expressed its intent to limit the number and types of aggravated batteries that would qualify as forcible felonies." *Id.*

¶ 40    Based on the foregoing authorities, defendant's aggravated battery conviction will only constitute a forcible felony and satisfy the armed habitual criminal statute's predicate offense requirement if his conduct resulted in great bodily harm or permanent disability or disfigurement to his victim. There is no dispute that the aggravating factor or factors underlying defendant's aggravated battery conviction were not specified in the certified copy of conviction presented to the circuit court. The certified copy of conviction presented by the State simply showed that defendant pled guilty to the offense of aggravated battery in case number 09-CF-2251. At trial, Defense counsel did not dispute the certified copy of conviction or argue that defendant's aggravated battery conviction was not based on his infliction of great bodily harm or permanent disability or disfigurement on his victim.

¶ 41    On appeal, however, in an effort to support his contention that his aggravated battery conviction did not in fact result in great bodily harm or permanent disability or disfigurement to his victim, defendant has attached to the appendix of his appellate brief, a document that appears to be an authentic bill of indictment returned by a grand jury in 2009 indicting him with two counts of aggravated battery. The first count alleged:

> "[D]efendant, in committing a Battery, in violation of the Illinois Compiled Statutes, Chapter 720, Section 5/12-3, without legal justification and by use of a deadly weapon, to wit: a knife, knowingly made physical contact of an insulting or provoking nature with Eric Field, in that defendant stabbed Eric Field about the body with a knife, in violation of Chapter 720, Section 5/12-4(b)(1), of the Illinois Compiled Statutes, 2009, contrary to Statute and against the peace and dignity of the same People of the State of Illinois."

¶ 42    The second count, in turn, alleged:

> "[D]efendant, in committing a Battery, in violation of the Illinois Compiled Statutes, Chapter 720, Section 5/12-3, without legal justification and by use of a deadly weapon, to wit: a knife, knowingly made physical contact of an insulting or provoking nature with Eric Field, in that [he] punched Eric Field about the body while Eric Field was on a public way, namely: Mallard Street at or near Skylark, Joliet, Will County, Illinois, in violation of Chapter 720 5/12-4(b)(8) of the Illinois Compiled Statutes, 2009,

contrary to Statute, and against the peace and dignity of the same People of the State of Illinois."

¶ 43    Defendant did not supplement the record on appeal with a copy of the indictment or the mittimus entered in case number 09-CF-2251, even though he could have done so. See, *e.g.*, *Smith*, 2016 IL App (1st) 140496, ¶ 7 (noting that the defendant, who was arguing on appeal that his prior conviction for aggravated battery of a police officer did not constitute a forcible felony, had supplemented the record with a copy of "the indictment and mittimus entered in that case"). Instead, he urges this court to take judicial notice of the copy of the indictment he included in the appendix of his brief. Moreover, he asks this court to presume that the victim of his aggravated battery did not suffer great bodily harm or disfigurement even though he evidently stabbed and punched his victim because the indictment does not specifically mention that the stabbing and punching caused his victim to suffer great bodily harm or permanent disability or disfigurement. We decline to do so.

¶ 44    Initially, we note that whether a conviction constitutes a "forcible felony" is a question of law for the circuit court to decide. *People v. Webb*, 2018 IL App (3d) 160403, ¶ 17. Moreover, it is well established that defendant, as the appellant, " 'has the burden of providing a sufficiently complete record on appeal so that the reviewing court is fully informed regarding the issues to be resolved' " and " 'in the absence of a complete record on appeal, it is presumed that trial court's judgment conforms to the law and has a sufficient factual basis.' " *People v. Moore*, 377 Ill. App. 3d 294, 300 (2007) (quoting *People v. Odumuyiwa*, 188 Ill. App. 3d 40, 45-46 (1989)). It is likewise well established that "[t]he inclusion of evidence in an appendix is an improper supplementation of the record with information *dehors* the record." *People v. Wright*, 2013 IL App (1st) 103232, ¶ 38. This is particularly true, whereas here, the document that is affixed to the appendix is an essential component to evaluate the specific argument raised on appeal. *Cf. People v. McGregory*, 2019 IL App (1st) 173101, ¶ 3 n.1 (finding that the State's inclusion of an indictment in its appendix, though improper, was harmless "[b]ecause the contents of the indictment [were] not relevant to the issues on appeal").

¶ 45    Ultimately, given the lack of information contained in the record on appeal pertaining to defendant's prior aggravated battery conviction that was used to satisfy the armed habitual criminal statute's predicate offense requirement, including the indictment, plea hearing, as well as the mittimus entered in that case, we necessarily reject his sufficiency of the evidence claim and affirm his armed habitual criminal conviction. We note, however, that defendant is not foreclosed from seeking relief via other avenues. See generally *People v. Kunze*, 193 Ill. App. 3d 708, 725-26 (1990) (recognizing that issues that require consideration of matters outside of the record are more appropriately addressed in petitions for postconviction relief than on direct appeal). In so finding, we reject that argument advanced by defendant in his petition for rehearing that this result relieves the State of its burden of proving his guilt beyond a reasonable doubt and improperly shifts the burden to him to establish his innocence. We reiterate that this court's review is constrained by the four corners of the record on appeal and by the applicable standard of review. Where, as here, a defendant is challenging the sufficiency of the evidence to sustain a criminal conviction, a reviewing court must view the evidence in the light most *favorable* to the prosecution and determine whether *any* rational trier of fact could have found each of the essential elements of the crime beyond a reasonable doubt. *Ward*, 215 Ill. 2d at 322. In this case, there is no dispute that defendant was convicted of aggravated battery and that aggravated battery constitutes a qualifying predicate offense under the armed habitual

criminal statute in certain circumstances. There is likewise no dispute that the record on appeal lacks evidence concerning the nature of his aggravated battery conviction. The record shows, however, that defense counsel did not challenge the State's contention at trial that his aggravated battery conviction satisfied the armed habitual criminal statute's predicate offense requirement. Given that lack of evidence in the record to substantiate defendant's claim that his aggravated battery conviction did not, in fact, satisfy the armed habitual criminal statute's predicate offense requirement, this court must necessarily reject defendant's sufficiency of the evidence claim. This result is the only one that this court can reach given the deficiencies of the record on appeal and applicable standard of review.

¶ 46                                      CONCLUSION

¶ 47          The judgment of the circuit court is affirmed.

¶ 48          Affirmed.