NOTICE
Decision filed 06/26/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 200072-U

NO. 5-20-0072

IN THE

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Jackson County. |
| | ) | |
| v. | ) | No. 19-CF-137 |
| | ) | |
| KING MICHAEL OLIVER, | ) | Honorable |
| | ) | Ralph R. Bloodworth III, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE BOIE delivered the judgment of the court.
Justices Moore and Barberis concurred in the judgment.

**ORDER**

¶ 1    *Held*: The defendant's convictions for threatening a public official and criminal trespass to real property are affirmed where the evidence was sufficient for a rational trier of fact to find the defendant guilty beyond a reasonable doubt. Additionally, the defendant's failure to provide an adequate offer of proof as to the contents of the Facebook Live videos he was barred from using at trial amounts to forfeiture of his claim, and the defendant's claim of a speedy trial violation must be rejected where the provisions for a speedy trial within 120 days do not apply to the defendant in this case. We further find that all remaining issues raised on appeal were forfeited by the defendant for failing to make an objection at the time of the alleged errors and for further failing to raise the issues in a written posttrial motion.

¶ 2    On December 17, 2019, following a jury trial, the defendant, King Michael Oliver, was convicted of one count each of threatening a public official in violation of section 12-9(a)(i) of the Criminal Code of 2012 (Code) (720 ILCS 5/12-9(a)(1)(i) (West 2018)), a

1

Class 3 felony, and criminal trespass to real property in violation of section 21-3(a)(3) of the Code (*id.* § 21-3(a)(3)), a Class B misdemeanor. The trial court sentenced the defendant to 7½ years in the Illinois Department of Corrections (IDOC) on the charge of threatening a public official, to be followed by one year of mandatory supervised release, and time served on the criminal trespass to real property charge.

¶ 3 The defendant raises several issues on appeal. He argues that: (1) he was improperly arrested for criminal trespass to real property; (2) the State violated the discovery rules; (3) the trial court erred in precluding him from introducing Facebook Live videos that he wanted to have played at trial; (4) his statutory right to a speedy trial was violated; (5) the evidence was insufficient to prove him guilty beyond a reasonable doubt; (6) his "second seizure" was illegal; (7) he was a victim of a malicious prosecution; (8) the jury was improperly instructed; and (9) the trial court erred in sustaining the State's objections during his opening and closing arguments, which violated his right to address the jury. As such, the defendant argues that his conviction should be reversed, and the information be dismissed. For the following reasons, we affirm.

¶ 4                                    I. BACKGROUND

¶ 5 On April 10, 2019, the defendant was charged, by information, with one count of threatening a public official (720 ILCS 5/12-9(a)(1)(i) (West 2018)), in that he knowingly conveyed to Officer Andrew Sabens of the Carbondale Police Department, a public official, a communication containing a threat that placed Officer Sabens in reasonable apprehension of immediate or future bodily harm. The defendant told Officer Sabens that upon the defendant's release from jail, the defendant was going to find Officer Sabens and

inflict physical harm upon Officer Sabens. The defendant conveyed the aforesaid threat because of Officer Sabens' performance of a public duty, being Officer Sabens' participation in the arrest and transportation of the defendant to jail.

¶ 6 The defendant was also charged with one count of criminal trespass to real property (*id*. § 21-3(a)(3)), in that he knowingly remained in a building other than a residence of another, namely the Schnucks store located in Carbondale, Jackson County, Illinois, after receiving notice from Bradley T. Young, an occupant and authorized representative of the owner of said building, to depart said building. As the State points out in its brief, the information identified the statutory violation as section 21-3(a)(1), but the language of the charge follows the language set out in section 21-3(a)(3), so it is likely that the State mis-cited the statute in its charging document. This is further substantiated by the language of the jury instructions. Accordingly, we will consider the mis-citation in the charging document as a scrivener's error, and accept the State's contention that the proper citation was to section 21-3(a)(3).

¶ 7 On April 11, 2019, the defendant posted $750 cash bond. However, on April 25, 2019, the defendant was arrested in a different matter and was returned to prison for a parole violation until October 28, 2019. In this matter, the defendant elected to proceed *pro se*, and filed several pleadings, including motions for discovery. On July 9, 2019, the State indicated that it had some discovery available for the defendant to view in open court, and further stated:

> "I would propose the Defendant be allowed to review copies of these materials in court today but he not receive copies to take with him because under

3

the Supreme Court Rules, I can only provide those to an attorney. If he had an attorney, I could give copies to the attorney.

But since he's *pro se*, I would propose that he view these in court today. \*\*\* He has not provided me with any discovery. I heard him say something about a video. There may be some witnesses. I would ask on the record that he identify those items as I've just identified my discovery for this Court this morning."

Thereafter, the trial court told the defendant that it could not explain to him how to try his case, but indicated that there are discovery rules that the defendant must abide by, and that if he had any witnesses or a video that he wished to present at trial, he must provide such information to the State. The trial court then asked the defendant if he wanted to review the State's discovery, and the defendant indicated that he did. The trial court then gave the defendant time to review the State's discovery materials.

¶ 8    The State answered the defendant's motions for discovery on July 31, 2019, and August 7, 2019. On July 31, 2019, the State filed a pleading titled, "People's Discovery to Defendant," which memorialized what it produced to the defendant on July 9, 2019, in open court. At the hearing on August 5, 2019, the State referenced its July 31, 2019, pleading, and stated that it included some items that the defendant had not yet seen. One of the items was a disk containing audio and video of the incident that occurred when the defendant was transported to the jail. The State suggested that the defendant be allowed to review the video in the courtroom that day, which was allowed.

¶ 9    The State further indicated to the trial court that it had not received any discovery from the defendant. Thereafter, the State stated:

4

"While we were having our discussions, [the defendant] told me about a number of items of what he calls discovery that he has been requesting. I believe he's been requesting those items by making filings with the Court without serving any notice of those filings on the People. So I didn't have copies of any of these documents he's been sending to the Court.

In the documents he sent to the Court he requests things like copies of 911 call recordings. Well, that could be material evidence in this case that I could recover, and I think I have an obligation to search for if it could be material to his guilt or innocence. There's also some Facebook videos that he says he created that depict the events in this case or at least related to this case. I think that's potentially material evidence. He told me in the jury room just now that some of those videos were on the scene at Schnucks, and he says those are available on Facebook. I could not access them, but I think the officer may be able to access them.

There's other things that are listed in his court pleadings that I reviewed briefly and I think could be material to this case. So what I would propose is we vacate the jury trial setting and we set this case for jury trial in 30 to 60 days so that I can have time to gather this material evidence and make it available to [the defendant], and we can talk about the case at that point."

The defendant objected, stating that he had previously filed a motion for a speedy trial. The trial court indicated, however, that the record was devoid of any such speedy trial motion. The trial court further granted the State's request to vacate the trial date for the following

week and set the matter over for a hearing on the defendant's motions—attributing the delay to the defendant.

¶ 10 On September 11, 2019, and November 14, 2019, the defendant filed documents titled, "Defendant's Discovery to State," both of which consisted of one paragraph stating:

"(1) Facebook live videos and/or rather the proper route to access and/or to view the videos via 'King Youdontknowme' which are posted publicly for the world to see on Facebook for anyone and everyone who has a Facebook page (or account) to see.

Defendant hereby notifies the People of Illinois that these videos will be used at trial."

¶ 11 Also on September 11, 2019, the defendant filed a document titled, "Petition for Writ of Habeas Corpus," which stated, in relevant part, that "[i]n the course of litigation, this court has also deprived [the defendant] of *** 120 day speedy trial." At the trial court's September 11, 2019, hearing on all pending motions, the trial court stated that the defendant's speedy trial right had been tolled by the filing of his motions. The State indicated, however, that the defendant was not being held in the IDOC on this case, and as such, the State argued that the defendant would have been required to make a motion for speedy trial to trigger the running of any speedy trial term. The trial court concurred with the State and informed the defendant that he could file a speedy trial motion, but the defendant indicated that he believed that the first motion he filed in this matter was a speedy trial demand. The defendant then, however, stated that he wished to withdraw all pending motions and proceed to trial. Accordingly, the trial court indicated that it would set the matter for trial. Additionally, the State provided more discovery to the defendant in open

6

court, consisting of a certified copy of a conviction out of Pulaski County, and suggested that once a trial date is set, the trial court allow the defendant to come back to court and review all of the State's discovery again in preparation for trial, to which the trial court agreed. On September 23, 2019, the trial court informed the defendant in open court that it would be remanding the defendant to the Jackson County jail from the IDOC that day so that the defendant could adequately prepare for trial by going through discovery.

¶ 12 On October 1, 2019, the defendant filed a motion to dismiss charges, alleging, in relevant part, that he had been incarcerated since his arrest on April 24, 2019, and therefore, had been in "custody during the entire 120-day term for violation of parole resulting from the commencement of this case." The defendant further declared that he had not agreed to any delay and had made many objections on the record in open court. Within his motion, the defendant also included his "Final Submissions," which consisted of things the defendant intended to do and use at trial, including questions he wished to ask during *voir dire*, and a "Brief Impartial Statement of the Case." The defendant's final submissions also included an exhibit list, stating that the only evidence he intended to introduce at trial was Facebook Live videos he recorded on two different cellphones leading up to his arrest.

¶ 13 On December 13, 2019, the State filed a response to the defendant's motion to dismiss, arguing that the provisions for a speedy trial within 120 days do not apply to the defendant, who was in custody from April 25, 2019, until October 28, 2019, for a violation of his parole in a different case. The State further pointed out that the defendant was informed that he was not being held in custody on this case and the 120 days did not apply to his present incarceration by the trial court in open court on September 11, 2019,

7

September 23, 2019, September 30, 2019, October 8, 2019, and October 18, 2019. Additionally, the State noted that the defendant was not served with the warrant in this case until October 17, 2019, and was released on a recognizance bond on November 14, 2019. Accordingly, the trial court found that 120-day speedy trial provision did not apply to the defendant and denied the defendant's motion to dismiss.

¶ 14    The State also objected to the defendant's attempt to introduce at trial any Facebook Live videos, arguing that the defendant failed to produce any videos in discovery. The defendant stated that the videos depicted the events leading up to his arrest, and that the videos were publicly accessible. The defendant further stated that he "could try to actually provide the State with exact footage that I plan on using at trial." The trial court indicated that if this issue came up at trial, it could not tell the defendant how to get things admitted into evidence.

¶ 15    The defendant's jury trial began on December 16, 2019. Before the trial began, the State made an oral motion *in limine* seeking the trial court to preclude the defendant from introducing any evidence that was not provided to it in discovery, including the defendant's Facebook Live videos. The trial court granted the State's motion *in limine* over the defendant's objection.

¶ 16    Bradley Young, a manager at the Schnucks grocery store in Carbondale, testified that on April 9, 2019, at approximately 11:30 a.m., he was alerted to a shirtless gentleman in the front foyer area of the store who was acting "really strange." Young testified that he and another manager walked out to the foyer area to see what was going on, and saw the gentleman, identified as the defendant, holding a cellphone and using a plug-in to charge

8

his cellphone "while he was Facebooking." Young stated that he asked the defendant what was going on, and the defendant started talking about an incident that he had with some police officers that were not really police officers. Young asked the defendant if he was wanting to do some business at Schnucks, and the defendant indicated that he did. As such, Young told the defendant that he needed to put a shirt on, and the defendant asked Young if he would go in and buy him a shirt. Young told the defendant no, so then, the defendant began asking customers entering the store to buy a shirt for him. Young stopped the defendant from asking customers to buy him a shirt, and told the defendant that if he could not put a shirt on, then he needed to leave.

¶ 17    Young testified that thereafter, the defendant still had his cellphone and told Young that he was going to FaceTime him. Young told the defendant that he needed to put his cellphone up because he was not okay with the defendant "FaceTiming" him along with another manager. Young again asked the defendant to leave, but after the defendant repeatedly refused, Young said he was going to call the police. Young stated that the defendant kept talking about issues he had with police officers that morning that were not really police officers, and that the defendant said that if Young was going to call the police, he wanted to make sure that they were real police officers. Young testified that once the police officers arrived, they asked the defendant nicely to leave the premises, but the defendant again refused.

¶ 18    Carbondale police officer Ashley Noto testified that at approximately 11:42 a.m., he was dispatched to Schnucks, where he found the defendant in the foyer area of the store. Officer Noto testified that after speaking with the manager about what was going on, he

then asked the defendant numerous times to leave the store or he would be subject to arrest for trespassing, but the defendant still refused. Officer Noto stated that the defendant was recording him on his cellphone to Facebook Live and making odd comments like, "You're not the real police," and "I need to speak with the real police." Officer Noto told the defendant to walk with him outside, which the defendant began to, but then he stopped in the foyer area again to plug in his cellphone. Officer Noto told the defendant again that he needed to leave, and once the defendant finally exited the store, he stopped again to plug in his cellphone in an outlet on the outside of the store, still on Schnucks' property, and refused to leave. Officer Noto testified that at that time, the defendant was placed under arrest for criminal trespass to real property. On redirect, Officer Noto testified that he asked Schnucks for any video surveillance that they had depicting the events that led to the defendant's arrest that day, but none were provided.

¶ 19    Officer Noto testified that Carbondale police officer Andrew Sabens arrived at Schnucks after Officer Noto and observed Officer Noto's efforts to get the defendant to leave the foyer area. Officer Sabens testified that he recognized the defendant as an individual he had encountered earlier that morning before the incident at Schnucks. Officer Sabens described the defendant's behavior that day at Schnucks as "noncompliant," and stated that the defendant was led outside the foyer area, but when he refused to leave, he was thereafter arrested for criminal trespass to real property. Officer Sabens testified that once the defendant was placed in handcuffs, he started cussing at the police officers, so the decision was made to transport the defendant directly to the Jackson County jail. Officer Sabens stated that while the defendant was being transported, the defendant got aggressive

10

and threatened Officer Sabens, telling Officer Sabens that he was going to beat him up, calling him a "pussy ass bitch," and saying things like, "take the cuffs off and let's fight man to man." Officer Sabens testified that the defendant continued behaving in this manner the entire drive to the jail. Officer Sabens further stated that the defendant threatened Officer Sabens by telling him that when he was released from jail, he was going to personally find him. Officer Sabens testified that he felt personally threatened by the defendant's words, as he had no reason not to believe the defendant. Accordingly, the defendant was also arrested for threatening a public official. Thereafter, People's Exhibits No. 1 and 2, the video recording and accompanying audio recording made from the in-car camera from Officer Sabens' police vehicle and Officer Sabens' pager depicting the defendant's behavior and statements made during his transport to the jail, were admitted into evidence and played for the jury.

¶ 20    At the conclusion of the State's case, the defendant indicated that he was not going to testify, but again requested to play the Facebook Live videos of the incident for the jury. The trial court once again denied the defendant's request because the defendant had failed to disclose any such videos to the State in discovery. The jury returned guilty verdicts on both counts, and the trial court subsequently sentenced the defendant to 7½ years in the IDOC on the charge of threatening a public official, to be followed by one year of mandatory supervised release, and time served on the criminal trespass to real property charge. No posttrial motions were filed by the parties.

¶ 21                            II. ANALYSIS

¶ 22    The first issue we must address is that the defendant's *pro se* brief fails to comply with many of the requirements of Illinois Supreme Court Rule 341 (eff. May 25, 2018). Rule 341 governs the content of appellate briefs, and is made applicable to criminal cases by Illinois Supreme Court Rule 612(b)(9) (eff. July 1, 2017). Although the defendant is a *pro se* litigant, his status does not lessen his burden on appeal. "In Illinois, parties choosing to represent themselves without a lawyer must comply with the same rules and are held to the same standards as licensed attorneys." *Holzrichter v. Yorath*, 2013 IL App (1st) 110287, ¶ 78. Rule 341(h) states that an appellant's brief should contain a statement of "the facts necessary to an understanding of the case, stated accurately and fairly without argument or comment, and with appropriate reference to the pages of the record on appeal," and an argument "which shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." Ill. S. Ct. R. 341(h)(6), (7) (eff. May 25, 2018). Accordingly, this court is entitled to have the issue(s) clearly defined with cohesive arguments presented and pertinent citations to legal authority. *Obert v. Saville*, 253 Ill. App. 3d 677, 682 (1993).

¶ 23    Here, the defendant's statement of facts does not set forth "the facts necessary to an understanding of the case." See Ill. S. Ct. R. 341(h)(6) (eff. May 25, 2018). Rather, the defendant's statement of facts starts out by stating:

> "There are facts concerning this case that are beyond the scope of this Appeal 'however,' ALL FACTS are relevant to the understanding of any situation in its entirety so I have included, in the Appendix (A1-A20), MY PERSONAL

12

ACCOUNT OF OFFENSE(S) to insure that full understanding to all and it should be read first."

An appendix should be limited to documents that are in the record on appeal, and placing documents in an appendix does not make them a part of the appellate record. See *People v. Carter*, 2019 IL App (1st) 170803, ¶ 44 (" '[t]he inclusion of evidence in an appendix is an improper supplementation of the record with information *dehors* the record' " (quoting *People v. Wright*, 2013 IL App (1st) 103232, ¶ 38)); Ill. S. Ct. R. 342 (eff. Oct. 1, 2019) (an appendix may include "materials from the record that are the basis of the appeal or pertinent to it"). "[I]f the materials are not taken from the record, they may not generally be placed before the appellate court in an appendix and will be disregarded." *Oruta v. B.E.W.*, 2016 IL App (1st) 152735, ¶ 32. The defendant's statement of facts and his appendix further include several paragraphs of information not contained in the record on appeal.

¶ 24 Moreover, much of the defendant's argument section is a narrative of the case from his perspective, containing conclusory, vague allegations with little or no citations to the record on appeal and sporadic citations to legal authority presumably supporting his claims. The supreme court rules are not mere suggestions, and we may strike a brief for failure to comply with the rules. See *People v. Williams*, 2020 IL App (3d) 180024, ¶ 25. Further, the defendant's failure to support his contentions with citation to legal authority or coherent argument forfeits review of his claims. Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018); *People v. Sprind*, 403 Ill. App. 3d 772, 778-79 (2010). Nevertheless, we have the benefit of the State's cogent brief. As such, as the issues are evident and the merits of the appeal can be

readily ascertained from the record on appeal, we will proceed to the merits of the appeal. See *Twardowski v. Holiday Hospitality Franchising, Inc.*, 321 Ill. App. 3d 509, 511 (2001).

¶ 25    The next issue we must address is the defendant's failure to file a posttrial motion. It is well settled that an issue is forfeited on appeal unless a party makes an objection at the time of a purported error and specifically raises the issue in a written posttrial motion. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). The purpose of this rule is to encourage parties to raise their concerns in the trial courts so that courts have an opportunity to correct their errors. *1010 Lake Shore Ass'n v. Deutsche Bank National Trust Co.*, 2015 IL 118372, ¶ 14. Here, the defendant failed to file a posttrial motion raising any of the issues he now brings on appeal. Moreover, the defendant raises two new issues for the first time in his reply brief. "Points not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing." Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018). Consequently, we find that the defendant has forfeited his claims that he was improperly arrested for criminal trespass to real property; the State violated the discovery rules; his "second seizure" was illegal; he was a victim of a malicious prosecution; the jury was improperly instructed; and, the trial court erred in sustaining the State's objections during his opening and closing arguments which violated his right to address the jury, for failing to make an objection at the time of the alleged errors and for further failing to raise the issues in a written posttrial motion. In *Enoch*, however, the Illinois Supreme Court held that challenges to the sufficiency of the evidence are not subject to forfeiture for failing to file a posttrial motion. See *Enoch*, 122 Ill. 2d at 190. Accordingly, we will address the defendant's challenge to the sufficiency of the evidence.

14

¶ 26 Additionally, with respect to the defendant's issue that the trial court erred in precluding him from introducing Facebook Live videos that he wanted to have played at trial, it is well settled that in order to properly preserve for review an error in the exclusion of evidence, the defendant must make an adequate offer of proof in the trial court, and a defendant's failure to make such an offer of proof results in the forfeiture of the issue. *People v. Staake*, 2017 IL 121755, ¶ 51. An adequate offer of proof requires that the proponent of the evidence informs the trial court, with particularity, of the substance of the anticipated evidence, and an offer of proof that merely summarizes the evidence in a conclusory manner is inadequate. *Snelson v. Kamm*, 204 Ill. 2d 1, 23 (2003). The purpose of providing an offer of proof is to advise the trial court, opposing counsel, and reviewing court, of the nature and substance of the evidence sought to be introduced (*People v. Leak*, 398 Ill. App. 3d 798, 822 (2010)), and for the reviewing court to be able to determine whether the exclusion of evidence was proper (*People v. Tabb*, 374 Ill. App. 3d 680, 689 (2007)).

¶ 27 As the State points out, the defendant did not make an adequate offer of proof explaining the content of the Facebook Live videos that were excluded at trial. In response to the State's oral motion *in limine* asking the trial court to preclude the defendant from introducing any evidence that was not provided to it in discovery, including the defendant's Facebook Live videos, the defendant stated, "There are actual recordings of the factual truth and I intend to use them in my defense. That's the only evidence that I have[.]" The defendant did not allege that the videos contradicted any of the testimony provided by the witnesses at trial, nor that the videos would show anything other than corroboration of the

15

events as otherwise stated at trial. Consequently, the defendant's failure to provide an adequate offer of proof as to the contents of the Facebook Live videos amounts to the forfeiture of his claim, notwithstanding the defendant's failure to disclose such videos to the State in discovery.

¶ 28     The defendant also argues that his statutory right to a speedy trial, pursuant to section 103-5(a) of the Code of Criminal Procedure of 1963, known as the Speedy Trial Act (725 ILCS 5/103-5(a) (West 2018)), was violated because he was held in custody for this offense for more than 120 days, and that none of the delays were attributable to him. The provisions for a speedy trial within 120 days, however, does not apply to the defendant in this case since he was in custody from April 25, 2019, until October 28, 2019, for a violation of his parole in a different case, subsequent to his arrest in this case on April 9, 2019, and posting $750 cash bond on April 11, 2019. The State below further pointed out that the defendant was informed that he was not being held in custody on this case and the 120 days did not apply to his present incarceration by the trial court in open court on September 11, 2019, September 23, 2019, September 30, 2019, October 8, 2019, and October 18, 2019. Additionally, the defendant was not served with the warrant in this case until October 17, 2019, and was released on a recognizance bond on November 14, 2019. Accordingly, the defendant's claim of a speedy trial violation must be rejected.

¶ 29     We will now address the defendant's remaining issue of the sufficiency of the evidence. The defendant challenges the sufficiency of the evidence to convict him of threatening a public official and criminal trespass to real property. Our standard of review

16

for a challenge to the sufficiency of the evidence in a criminal case has been stated by our supreme court as follows:

> "When considering a challenge to a criminal conviction based upon the sufficiency of the evidence, this court will not retry the defendant. [Citation.] Rather, in such cases the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. [Citation.] Thus, it is our duty in the case at bar to carefully examine the evidence while giving due consideration to the fact that the court and jury saw and heard the witnesses. [Citations.] If, however, after such consideration we are of the opinion that the evidence is insufficient to establish the defendant's guilt beyond a reasonable doubt, we must reverse the conviction. [Citations.] The testimony of a single witness, if it is positive and the witness is credible, is sufficient to convict. [Citations.] While credibility of a witness is within the province of the trier of fact, and the finding of the jury on such matters is entitled to great weight, the jury's determination is not conclusive. Rather, we will reverse a conviction where the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of defendant's guilt. [Citations.]" *People v. Smith*, 185 Ill. 2d 532, 541-42 (1999).

¶ 30    At trial, Officer Noto testified that Officer Sabens arrived at Schnucks after Officer Noto and observed Officer Noto's efforts to get the defendant to leave the foyer area. Officer Sabens testified that he recognized the defendant as an individual he had encountered earlier on the morning of the incident. Officer Sabens described the

17

defendant's behavior at Schnucks as "noncompliant," and that the defendant was led outside the foyer area, but when he repeatedly refused to leave, he was thereafter arrested for criminal trespass to real property. Officer Sabens testified that once the defendant was placed in handcuffs, he began using obscenities and making threats toward the police officers. Officer Sabens testified that he felt personally threatened by the defendant's words, as he had no reason not to believe the defendant. Accordingly, the defendant was also arrested for threatening a public official. People's Exhibits No. 1 and 2, the video recording and accompanying audio recording made from the in-car camera from Officer Sabens' squad car and Officer Sabens' pager depicting the defendant's behavior and statements made during his transport to the jail, were admitted into evidence and played for the jury.

¶ 31    In order to convict the defendant of threatening a public official, the State was required to prove, beyond a reasonable doubt: (1) that the defendant knowingly and willfully communicated, directly or indirectly, a threat to a public official; (2) that the threat placed the public official in reasonable apprehension of immediate or future bodily harm; and (3) that the threat was related to the official's public status. See *People v. Kirkpatrick*, 365 Ill. App. 3d 927, 930 (2006); 720 ILCS 5/12-9(a)(1)(i) (West 2018). The trier of fact may consider the context in which a threat arose when determining whether the threat was credible. *People v. Peterson*, 306 Ill. App. 3d 1091, 1100 (1999).

¶ 32    Here, based on the evidence presented at trial, the defendant knowingly and willfully communicated direct threats to Officer Sabens, a public official. Officer Sabens testified that he felt personally threatened by the defendant's words, as he had no reason

18

not to believe the defendant, thereby placing him in reasonable apprehension of future bodily harm. Finally, the defendant's threats were related to Officer Saben's status as a police officer. As such, we do not find that the evidence was so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of the defendant's guilt.

¶ 33    In order to convict the defendant of criminal trespass to real property, the State was required to prove, beyond a reasonable doubt, that the defendant knowingly remained in a building other than a residence of another after receiving notice from the occupant to depart. See 720 ILCS 5/21-3(a)(3) (West 2018). At trial, Bradley Young, a manager at Schnucks, testified that he and another manager repeatedly asked the defendant to leave, but after the defendant refused, Young said he was going to call the police. Young testified that once the police officers arrived, they asked the defendant nicely to leave the premises, but the defendant still refused. As such, based on the evidence presented at trial, the defendant knowingly remained in Schnucks after receiving notice from the store's managers to depart. Accordingly, we do not find that the evidence was so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of the defendant's guilt.

¶ 34                                      III. CONCLUSION

¶ 35    For the foregoing reasons, the defendant's convictions for threatening a public official and criminal trespass to real property are affirmed where the evidence was sufficient for a rational trier of fact to find the defendant guilty beyond a reasonable doubt. Additionally, the defendant's failure to provide an adequate offer of proof as to the contents of the Facebook Live videos he was barred from using at trial amounts to forfeiture of his claim, and the defendant's claim of a speedy trial violation must be rejected where the

19

provisions for a speedy trial within 120 days do not apply to the defendant in this case. We further find that all remaining issues raised on appeal were forfeited by the defendant for failing to make an objection at the time of the alleged errors and for further failing to raise the issues in a written posttrial motion. Accordingly, we affirm the defendant's convictions and sentence.

¶ 36    Affirmed.